Honorable Sandra J. Feuerstein
United States District Court
Eastern District Court
100 Federal Plaza
Central Islip, New York 11722

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  **JUN 05 2014**  ★

LONG ISLAND OFFICE

June 1, 2014

Re: Manti's Transportation and Alfred J. Manti
    Case No. 13 Civ. 6546   (SJF) ( WDW)

Your Honor,

On a letter dated April 29, 2014 asking that Deborah Manti be allowed to intervene, there were three pages showing different signatures but these pages were not listed as exhibits.

We are including these same pages with this letter with the appropriate exhibit tags. Please post these exhibits in case they're referenced too, in the future.

Thank you

Alfred J. Manti

**RECEIVED**
JUN 0 5 2014
EDNY PRO SE OFFICE

CC: Sarah O'Connell, Fulbright & Jaworski
    Adam Newman, Law firm of Adam Newman

April 29, 2014

Honorable Sandra J. Feuerstein  U.S.D.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: Manti's Transportation and Alfred J. Manti
    Case No: 13 Civ. 6546   (SJF) (WDW)

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JUN 05 2014   ★

LONG ISLAND OFFICE

Your Honor,

My name is Deborah Manti, I am the wife of Alfred Manti. I'm writing because I would
like to be added to my husbands lawsuit as a party of interest.

My husband and I have an old fashioned family. I stayed home and raised the children,
we have two girls and two boys, and my husband always supported us. I have  stood by
the last several years watching my husband try to scratch out a living delivering oil and at
the same time try and take on Associates Commercial , then Citicapital and now General
Electric. He has always tried to shield me from the everyday grind of this lawsuit telling
me not to worry but I'm starting to feel that the pressure of this case just might be too
much for him. I do not want to be shielded any further, I want to join this fight and
hopefully bring an end to this nightmare for him and the rest my family.

As I stated before, I stayed home and dealt with the kids, I never had anything to do with
my husbands bus company. In November of 1999, at the request of Larry Shute, who was
in our home many times, I was asked to sign a guarantee on a contract for two buses from
Campus Coach. Since I had never done this before, I did seem curious but after Al and I
discussed it, I signed. It's not like this was new to us, he was in business since the early
80's and was well qualified. Larry Shute came to our home and my husband signed a
security agreement and the both of us signed a "continuing guaranty". I will include a
copy of the guaranty with this letter.

Everything seemed to be fine, my husband started buying additional buses but there
seemed to be trouble actually getting underway, we did not have the proper paperwork,
the titles were not being delivered by Larry Shute. My husband was paying a lot of money
for the monthly loans out of our personal funds but for some reason we could not get the
titles to operate. Mind you, I was still doing my job with the kids but I knew something
was very wrong.

I remember my husband calling the Headquarters of Associates in Dallas, Texas and talking to the Executive VP. He went there sometime in the summer of 2000 and when he came home he said everything was finalized and we would refinance all the buses down in Pennsylvania at Larry Shute's office.

The both of us went to Shute's office in Pennsylvania on 8/21/2000 and again I signed a similar document along with my husband, the same document I signed on 11/18/1999. He signed additional documents pertaining to security agreements and left thinking all was good and we could get back to a normal life again. I distinctly remember Larry Shute telling the both of us that the title problem is behind us and we will be receiving them within days. They never arrived. After a few weeks of constant calls to Larry Shute my husband read about Associates Commercial Corporation selling to CitiCapital. He started a lawsuit immediately. We paid over $149,000.00 up to this point and received nothing. I will also include a copy of this 8/21/2000 guaranty.

Needing a job, my husband was fortunate to get a job delivering home heating oil in the latter part of 2000. He must be pretty good at it, he is still delivering to this day.

From the beginning of the lawsuit, my husband came to me and asked about this famous release. Judge, it was in my home when the first time I ever signed any document for this business and I remember as if it was yesterday. I looked at every page in the documents , especially the one I signed and I never saw any type of release. The reason I know about releases was that I signed one just a few weeks before that was prepared by our attorney, Vincent Pitta, along with my husband. It was for the bus company Metrotrans, a manufacturer in Georgia. If there was a release in the papers from Larry Shute my husband would have faxed them to Vinny instantly and waited for his ok. Vinny is my husbands closest friend, he would never sign a release without Vinny's approval. Something is very wrong with this release.

Your Honor, that was my whole involvement in this situation till, the beginning of December of 2011, when we received the title from that girl in Montana, who got fired for doing her job. When my husband opened that Fed Ex package, he immediately told me whoever sent this would be fired. I thought he was being dramatic but when I noticed the lawyers around our home within the next few days, I started to think maybe something is about to happen.

I stayed in the background till my husband actually told me this poor girl was fired. I went ballistic, I told my husband, this is his fault, I just couldn't imagine someone across our whole country could be fired for what happened in New York. I nagged him constantly to help this girl, he told me she had two little kids, but he would do everything he could to help her. I know if it wasn't for Al, the girl, Nicole Coghill would have got nothing. He went to Montana, talked to her , her husband and their lawyer. I understand she settled her case against GE. What kind of people could do this to their own people for doing her job. This cannot happen in this country.

I know my husband has been very busy the last few months with paperwork going back and forth between Campus Coach, GE and the Court. I know he's waiting to see if you dismiss the case or allow it to go forward. He also says the release, which he never remembers signing, has now come up again. If you want my opinion, Larry Shute made this whole thing up to save his own hide.

Your Honor, as I stated before I let my husband handle all these matters but when the girl got fired in Montana, the whole picture became very clear to me. I actually looked at the document Nicole sent and realized it was for the same contract I guaranteed way back on November 18, 1999. This day is burned into my memory, it was the first time I have ever, for any reason guaranteed anything. To think now that a contract I guaranteed , to buy buses from Campus Coach, was part of a conspiracy between Campus Coach and Larry Shute, is unthinkable. To read the court papers these defendants submitted to your court and the Campus Coach attorney actually asking for sanctions for filing this lawsuit, well I only have one word, shameful.

I also remember distinctly the drive to Exton, Pa. to Larry Shute's office on August 21, 2000. I, along with my husband signed the same continuing guarantee and within that contract is the Road Ready Registration charge for $715.00 . Your Honor, Associates, along with Larry Shute and John Umberger, knew right there when I was signing this guarantee that the titles were never going to be sent to my husband but would sit it some desk and in this instance till January of 2001 when they were sent to Road Ready Registration, for them to send the papers to Oklahoma for lien applications, not to New York, where they were supposed to go. This fraud perpetrated by Associates is right there in black and white. It is their documents, from the contracts to the Oklahoma liens and finally receiving the missing titles proves exactly what had happened. Is this what my signature on that guaranty was for? I do not think so !

So when I saw the papers from Nicole, that included the Oklahoma lien papers along with the original title that I guaranteed on November 18, 1999, all the pieces of the fraud came together.

I read all the documents my husband has submitted to your court and the exhibits detailing what has happened over the years. It seems every transaction has a cover-up somewhere close by. There are so many lies in these documents, they have to continue to feed the beast to keep their story going. Your Honor, these people have no decency. Where and when is this nightmare going to come to a just end. My husband cannot keep up this fight all by himself, Your Honor, he doesn't see it like I do, he would rather die than quit.

I have asked my oldest daughter to help, not only understanding everything but putting all documents in order to better understand what happened and when. It seems a little confusing at first but once you get into it, it becomes very clear.

I would like to be made party to Al's lawsuit because Associates and the banks that took

it over have ruined our life. I want to join in all the claims that my husband has, and I want to add two of my own. One for fraud against GE and Citicapital, and a second against GE and Citicapital for their lawyers misconduct under the Sec. 487 of the New York Judiciary Law. My husband found this section on the internet for misconduct by attorneys based upon their deceiving the court, and I want triple damages under the law.

Well Your Honor, I did not sign any release. I feel that my name which was on the guarantees of the 11/18/1999 and the 8/21/2000 should be enough for you to allow me to become a party of this suit. I knew immediately, in December of 2011, when we received the missing title that I had guaranteed that there was a huge fraud between Campus Coach and Larry Shute. Whoever heard of anyone getting paid a sum of $133,000.00, keeping the money and the actual item they sold initially, and asking the court for sanctions against the innocent buyer. Is this why I signed that 11/18/1999 guarantee for ?

I'm also enclosing a copy of what looks like a guarantee signed by me on 7/11/96. Which was submitted by Associates lawyer Bennett Katz, in the suit before Judge Block. Neither I or my husband signed that document. But that was the beginning of the fraud that you will hear about if you open up your last decision..

Your Honor, just looking at this obvious forged copy, compare my handwriting on the other two documents, something is very wrong. These people should not have the ability to ruin innocent lives, take away years and years of saving for the future for our children, and just being not very good people. These people have no right to do this, please include me as a party to this suit, I want to tell what these criminals have done to our family, this must stop now, if not now, when.


Sincerely


Deborah M. Manti



Cc: Adam Newman, Law firm of Adam Newman
    Sarah O'Connell , Fulbright and Jaworski

UNITED STATES DISTRICT COURT
EASTERN DISTRIT OF NEW YORK

_____

MANTI'S TRANSPORTATION and
ALFRED J. MANTI

                                     Index No: 13 -CV6546 (SJF)
                                     (WDW)

      PLAINTIFF

           -against-

PATRIIA KENNER, C LINES d/b/a/ CAMPUS COACH
GENERAL ELECTRIC CAPITAL CORPORATION
CITICAPITAL

      DEFENDANTS

_____

EXHIBITS

DDD  to  FFF

.

Exhibit    DDD

## CONTINUING GUARANTY

Valuable Consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, for themselves, their heirs, executors, personal representatives, successors and assigns individually called "Guarantor" and collectively called "Guarantors") jointly and severally and in solido, hereby unconditionally

intee to _____ **Associates Commercial Corporation** _____ its successors, endorses and assigns, (collectively
(Secured Party or Lessor)

1 "Associates") that _____ **Manti's Transportation, Inc.** _____ (the "Company"), whose address is _____
(Party to be Guaranteed)

lasting St _____ Staten Island _____ NY _____ 10305

promptly and fully perform, pay and discharge all of its present and future liabilities, obligations and indebtedness to Associates, whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, matured or unmatured, and whether originally contracted with or otherwise acquired by Associates (all of when ties), obligations and indebtedness are herein individually and collectively called the "Indebtedness"). This Guaranty is an absolute and unconditional guarantee of vent and not of collectibility. The liability of each Guarantor hereunder is not conditioned or contingent upon the genuineness, validity, sufficiency or enforceability of indebtedness or any instruments, agreements or chattel paper related thereto (collectively called "Agreements") or any security or collateral therefor (collectively d "Security") or the pursuit by Associates of any rights or remedies which it now has or may hereafter have. If the Company fails to pay the indebtedness promptly le same becomes due, or otherwise fails to perform any obligation under any of the Agreements, each Guarantor agrees to pay on demand the entire indebtedness all losses, costs, attorneys' fees and expenses which may be suffered by Associates by reason of the Company's default or the default of any Guarantor hereunder, agrees to be bound by and to pay on demand any deficiency established by the sale of any of the Agreements or Security, all without relief from valuation and statement laws and without requiring Associates to (i) proceed against the Company by suit or otherwise, (ii) foreclose, proceed against, liquidate or exhaust any of agreements or Security, or (iii) exercise, pursue or enforce any right or remedy Associates may have against the Company, any co-Guarantor (whether hereunder or ... a separate instrument) or any other party. Each Guarantor agrees that: this Guaranty shall not be discharged or affected by any circumstances which constitute a or equitable discharge of a Guarantor or surety, or by the death of any Guarantor; the records of Associates shall be received as conclusive evidence of the amount le indebtedness at any time owing; one or more successive or concurrent suits may be brought and maintained against any or all of the Guarantors, at the option of rcies, with or without joinder of the Company or any of the other Guarantors as parties thereto; such Guarantor will not avail itself of any defense whatsoever ch the Company may have against Associates, other than full payment of the Indebtedness; and such Guarantor will not seek a change of venue from any jurisdiction ourt in which any action, proceeding or litigation is commenced.

H GUARANTOR HEREBY WAIVES NOTICE OF ANY ADVERSE CHANGE IN THE COMPANY'S CONDITION OR OF ANY OTHER FACT WHICH MIGHT MATERIALLY IEASE SUCH GUARANTOR'S RISK, WHETHER OR NOT ASSOCIATES HAS KNOWLEDGE OF THE SAME. EACH GUARANTOR ALSO HEREBY WAIVES ANY CLAIM, IT OR REMEDY WHICH SUCH GUARANTOR MAY NOW HAVE OR HEREAFTER ACQUIRE AGAINST THE COMPANY THAT ARISES HEREUNDER AND/OR FROM THE FORMANCE BY ANY GUARANTOR HEREUNDER INCLUDING, WITHOUT LIMITATION, ANY CLAIM, REMEDY OR RIGHT OF SUBROGATION, REIMBURSEMENT, NERATION, CONTRIBUTION, INDEMNIFICATION, OR PARTICIPATION IN ANY CLAIM, RIGHT OR REMEDY OF ASSOCIATES AGAINST THE COMPANY OR ANY URITY WHICH ASSOCIATES NOW HAS OR HEREAFTER ACQUIRES; WHETHER OR NOT SUCH CLAIM, RIGHT OR REMEDY ARISES IN EQUITY, UNDER CONTRACT, STATUTE, UNDER COMMON LAW OR OTHERWISE.

ermination hereof shall be effective until the Guarantors deliver to Associates a written notice signed by them electing not to guarantee any new extension of credit may be granted by Associates to the Company after its receipt of such notice, but such notice shall not affect the obligations of the guarantors hereunder as to any all indebtedness existing at the time such notice is received. Each Guarantor hereby waives (i) notice of acceptance hereof and notice of extensions of credit given biedness signed, accepted, endorsed or assigned to Associates by the Company, (iii) all exemptions and homestead laws; (iv) any other demands and notices ared by law; and (v) any right to trial by jury. Associates may at any time and from time to time, without notice to or the consent of any Guarantor, and without cting or impairing the obligation of any Guarantor hereunder: (a) renew, extend or refinance any part or all of the indebtedness of the Company or any indebtedness s customers, or of any co-Guarantor (whether hereunder or under a separate instrument) or any other party; (b) accept partial payments of the indebtedness and y such payments to any part of the indebtedness; (c) settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate, in any manner, of the indebtedness, any Security, or any indebtedness of any co-Guarantor (whether hereunder or under a separate instrument) or any other party; (d) consent to transfer of any Security; (e) bid and purchase at any sale of any of the Agreements or Security; and (f) exercise any and all rights and remedies available to ociates by law or agreement even if the exercise thereof may affect, modify or eliminate any rights or remedies which a Guarantor may have against the Company. 1 Guarantor shall continue to be liable under this Guaranty, the provisions hereof shall remain in full force and effect, and Associates shall not be estopped from cising any rights hereunder, notwithstanding (i) Associates waiver of or failure to enforce any of the terms, covenants or conditions contained in any of the ments; (ii) any release of, or failure on the part of Associates to perfect any security interest in or foreclose, proceed against, or exhaust, any Security; or (iii) ociates failure to take new, additional or substitute security or collateral for the Indebtedness.

h Guarantor agrees that Associates may bring any legal proceedings it deems necessary to enforce any or all of such Guarantor's obligations hereunder in any court in State in which Associates' office administering the Indebtedness is located; and service of process may be made upon such Guarantor by mailing a copy of the mons to such Guarantor at its address last known to Associates. All rights and remedies of Associates are cumulative and not alternative. Each provision of this ranty is intended to be severable. Any term or provision hereof declared to be contrary to, prohibited by or invalid under applicable laws or regulations shall be plicable and deemed omitted herefrom, but shall not invalidate the remaining terms and provisions hereof.

N WITNESS WHEREOF, the Guarantors have executed this Guaranty on _____ **11/18/99** _____
(Date)

ness _____

:ness _____

aranter's Federal Taxpayer Identification or Social Security Number is

**104428545**

tness _____

tness _____

iaranter's Federal Taxpayer Identification or Social Security Number is

**092465375**

Guarantor **Alfred J Manti** _____ (L.S.)
(Name of individual, corporation or partnership)

By _____ Title Individually
(If corporate guarantor, authorized officer must sign and show corporate title. If partnership guarantor, a general partner must sign and show "Partner" after name. If individual guarantor, show "Individually" after name.)

Address **34 Hasting St** _____ Staten Island, NY 10305

Guarantor **Debra M. Manti** _____ (L.S.)
(Name of individual, corporation or partnership)

By _____ Title Individually
(If corporate guarantor, authorized officer must sign and show corporate title. If partnership guarantor, a general partner must sign and show "Partner" after name. If individual guarantor, show "Individually" after name.)

Address **34 Hasting St** _____ Staten Island, NY 10305

te: Insert exact company names where appropriate, individual guarantors must sign guaranty without titles. Sign simply "John Smith, Individually," not "John Smith, sident." DO NOT USE THIS FORM if the guarantor resides or has a principal place of business in Kentucky.

Exhibit   EEE

# CONTINUING GUARANTY

For Valuable Consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, for themselves, their heirs, executors, personal representatives, successors and assigns (individually called "Guarantor" and collectively called "Guarantors") jointly and severally and in solido, hereby unconditionally guarantee to ........ ASSOCIATES COMMERCIAL CORPORATION ........................................................ its successors, endorsees and assigns, (collectively (Secured Party or Lessor)

called "Associates") that ........ MANTI'S TRANSPORTATION, INC. ................................................ (the "Company"), whose address is .............................................
(Party to be Guaranteed)

.. 34 HASTINGS STREET ........................................ STATEN ISLAND .................................... NY .................... 10305 ................

shall promptly and fully perform, pay and discharge all of its present and future liabilities, obligations and indebtedness to Associates, whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, matured or unmatured, and whether originally contracted with or otherwise accrued by Associates (all of which liabilities, obligations and indebtedness are herein individually and collectively called the "Indebtedness"). This Guaranty is an absolute and unconditional guarantee of payment and not of collectability. The liability of each Guarantor hereunder is not conditional or contingent upon the genuineness, validity, sufficiency or enforceability of the Indebtedness or any instruments, agreements or chattel paper related thereto (collectively called "Agreements") or any security or collateral therefor (collectively called "Security") or the pursuit by Associates of any rights or remedies which it now has or may hereafter have. If the Company fails to pay the Indebtedness promptly as the same becomes due, or otherwise fails to perform any obligation under any of the Agreements, such Guarantor agrees to pay on demand the entire Indebtedness and all losses, costs, attorneys' fees and expenses which may be suffered by Associates by reason of the Company's default or the default of any Guarantor hereunder, and agrees to be bound by and to pay on demand any deficiency established by the sale of any of the Agreements or Security, all without relief from valuation and appraisement laws and without requiring Associates to: (i) proceed against the Company by suit or otherwise, (ii) foreclose, proceed against, liquidate or exhaust any of the Agreements or Security, or (iii) exercise, pursue or enforce any right or remedy Associates may have against the Company. Any co-Guarantor (whether hereunder or under a separate instrument) or any other party. Each Guarantor agrees that: this Guaranty shall not be discharged or affected by any circumstances which constitute a legal or equitable discharge of a Guarantor or surety, or by the death of any Guarantor; the records of Associates shall be received as conclusive evidence of the amount of the Indebtedness at any time owing; one or more successive or concurrent suits may be brought and maintained against any or all of the Guarantors, at the option of Associates, with or without joinder of the Company or any of the other Guarantors as parties thereto; such Guarantor will not avail itself of any defense whatsoever which the Company may have against Associates, other than full payment of the Indebtedness; and such Guarantor will not seek a change of venue from any jurisdiction or court in which any action, proceeding or litigation is commenced.

EACH GUARANTOR HEREBY WAIVES NOTICE OF ANY ADVERSE CHANGE IN THE COMPANY'S CONDITION OR OF ANY OTHER FACT WHICH MIGHT MATERIALLY INCREASE SUCH GUARANTOR'S RISK, WHETHER OR NOT ASSOCIATES HAS KNOWLEDGE OF THE SAME. EACH GUARANTOR ALSO HEREBY WAIVES ANY CLAIM, RIGHT OR REMEDY WHICH SUCH GUARANTOR MAY NOW HAVE OR HEREAFTER ACQUIRE AGAINST THE COMPANY THAT ARISES HEREUNDER AND/OR FROM THE PERFORMANCE BY ANY GUARANTOR HEREUNDER INCLUDING, WITHOUT LIMITATION, ANY CLAIM, REMEDY OR RIGHT OF SUBROGATION, REIMBURSEMENT, EXONERATION, CONTRIBUTION, INDEMNIFICATION, OR PARTICIPATION IN ANY CLAIM, RIGHT OR REMEDY OF ASSOCIATES AGAINST THE COMPANY OR ANY SECURITY WHICH ASSOCIATES NOW HAS OR HEREAFTER ACQUIRES; WHETHER OR NOT SUCH CLAIM, RIGHT OR REMEDY ARISES IN EQUITY, UNDER CONTRACT BY STATUTE, UNDER COMMON LAW OR OTHERWISE.

No termination hereof shall be effective until the Guarantors deliver to Associates a written notice signed by them electing not to guarantee any new extension of credit that may be granted by Associates to the Company after its receipt of such notice, but such notice shall not affect the obligations of the guarantors hereunder as to any and all Indebtedness existing at the time such notice is received. Each Guarantor hereby waives (i) notice of acceptance hereof and notice of extensions of credit given by Associates to the Company from time to time; (ii) presentment, demand, protest, and notice of non-payment or protest as to any note or other evidence of Indebtedness signed, accepted, endorsed or assigned to Associates by the Company, (iii) all exemptions and homestead laws; (iv) any other demands and notices required by law; and (v) any right to trial by jury. Associates may at any time and from time to time, without notice to or the consent of any Guarantor, and without affecting or impairing the obligation of any Guarantor hereunder: (a) renew, extend or refinance any part or all of the Indebtedness of the Company or any Indebtedness of its customers, or of any co-Guarantor (whether hereunder or under a separate instrument) or any other party; (b) accept partial payments of the Indebtedness and apply such payments to any part of the Indebtedness; (c) settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate, in any manner, any of the Indebtedness, any Security, or any Indebtedness of any co-Guarantor (whether hereunder or under a separate instrument) or any other party; (d) consent to the transfer of any Security: (e) bid and purchase at any sale of any of the Agreements or Security; and (f) exercise any and all rights and remedies available to Associates by law or agreement even if the exercise thereof may affect, modify or eliminate any rights or remedies which a Guarantor may have against the Company. Each Guarantor shall continue to be liable under this Guaranty, the provisions hereof shall remain in full force and effect, and Associates shall not be estopped from exercising any rights hereunder, notwithstanding (i) Associates waiver of or failure to enforce any of the terms, covenants or conditions contained in any of the Agreements; (ii) any release of, or failure on the part of Associates to perfect any security interest in or foreclose, proceed against, or exhaust, any Security; or (iii) Associates failure to take new, additional or substitute security or collateral for the Indebtedness.

Each Guarantor agrees that Associates may bring any legal proceedings it deems necessary to enforce any or all of such Guarantor's obligations hereunder in any court in the State in which Associates' office administering the Indebtedness is located; and service of process may be made upon such Guarantor by mailing a copy of the summons to such Guarantor at its address last known to Associates. All rights and remedies of Associates are cumulative and not alternative. Each provision of this Guaranty is intended to be severable. Any term or provision hereof declared to be contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining terms and provisions hereof.

IN WITNESS WHEREOF, the Guarantors have executed this Guaranty on ........ 8/21/00 ........................................................
(Date)

Witness ................................................

Witness ................................................          Guarantor  Alfred J. Menti ........................................ (L.S.)
(Name of individual, corporation or partnership)

Guarantor's Federal Taxpayer Identification or Social Security Number is          By ........................................ Title Individually
(If corporate guarantor, authorized officer must sign and show corporate title. If partnership guarantor, a general partner must sign and show "Partner" after name. If individual guarantor, use "Individually" after name.)

.... 104428545 ....          Address 34 Hastings Street ........................ Staten Island, NY 10305

Witness ................................................          Guarantor  Deborah Menti ........................................ (L.S.)
(Name of individual, corporation or partnership)

Witness ................................................          By ........................................ Title Individually
(If corporate guarantor, authorized officer must sign and show corporate title. If partnership guarantor, a general partner must sign and show "Partner" after name. If individual guarantor, use "Individually" after name.)

Guarantor's Federal Taxpayer Identification or Social Security Number is

.... 092465375 ....          Address 34 Hastings Street ........................ Staten Island, NY 10305

Note: Insert exact company names where appropriate. Individual guarantors must sign guaranty without titles. Sign simply "John Smith, Individually," not "John Smith, President." DO NOT USE THIS FORM if the guarantor resides or has a principal place of business in Kentucky.

820861 Rev. 10-94
3.00

**EXHIBIT FFF**

Exhibit   FFF

## CONTINUING GUARANTY

For Valuable Consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, for themselves, their heirs, executors, personal representatives, successors and assigns (individually called "Guarantor" and collectively called "Guarantors") jointly and severally and in solido, hereby unconditionally guarantee to _____ METROTRANS CORPORATION _____ its successors, endorsees and assigns, (collectively

(Secured Party or Lessor)

called "Associates") that _____ MANTI'S TRANSPORTATION,INC _____ (the "Company", whose address is

(Party to be Guaranteed)

270 VAN BRUNT STREET _____ BROOKLYN _____ NY 11231

shall promptly and fully perform, pay and discharge all of its present and future liabilities, obligations and indebtedness to Associates, whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, matured or unmatured, and whether originally contracted with or otherwise acquired by Associates (all of which liabilities, obligations and indebtedness are herein individually and collectively called the "indebtedness" ). This Guaranty is an absolute and unconditional guarantee of payment and not of collectability. The liability of each Guarantor hereunder is not conditional or contingent upon the genuineness, validity, sufficiency or enforceability of the indebtedness or any instruments, agreements or chattel paper related thereto (collectively called "Agreements") or any security or collateral therefor (collectively called "Security") or the pursuit by Associates of any rights or remedies which it now has or may hereafter have. If the Company fails to pay the indebtedness promptly as the same becomes due, or otherwise fails to perform any obligation under any of the Agreements, each Guarantor agrees to pay on demand the entire indebtedness and all losses, costs, attorneys' fees and expenses which may be suffered by Associates by reason of the Company's default or the default of any Guarantor hereunder, and agrees to be bound by and to pay on demand any deficiency established by the sale of any of the Agreements or Security, all without relief from valuation and appraisement laws and without requiring Associates to (i) proceed against the Company by suit or otherwise, (ii) foreclose, proceed against, liquidate or exhaust any of the Agreements or Security, or (iii) exercise, pursue or enforce any right or remedy Associates may have against the Company, any co-Guarantor (whether hereunder or under a separate instrument) or any other party. Each Guarantor agrees that this Guaranty shall not be discharged or affected by any circumstances which constitute a legal or equitable discharge of a Guarantor or surety, or by the death of any Guarantor; the records of Associates shall be received as conclusive evidence of the amount of the indebtedness at any time owing; one or more successive or concurrent suits may be brought and maintained against any or all of the Guarantors, at the option of Associates, with or without joinder of the Company or any of the other Guarantors as parties thereto; each Guarantor will not avail itself of any defense whatsoever which the Company may have against Associates, other than full payment of the indebtedness; and such Guarantor will not seek a change of venue from any jurisdiction or court in which any action, proceeding or litigation is commenced.

EACH GUARANTOR HEREBY WAIVES NOTICE OF ANY ADVERSE CHANGE IN THE COMPANY'S CONDITION OR OF ANY OTHER FACT WHICH MIGHT MATERIALLY INCREASE SUCH GUARANTOR'S RISK, WHETHER OR NOT ASSOCIATES HAS KNOWLEDGE OF THE SAME. EACH GUARANTOR ALSO HEREBY WAIVES ANY CLAIM, RIGHT OR REMEDY WHICH SUCH GUARANTOR MAY NOW HAVE OR HEREAFTER ACQUIRE AGAINST THE COMPANY THAT ARISES HEREUNDER AND/OR FROM THE PERFORMANCE BY ANY GUARANTOR HEREUNDER INCLUDING, WITHOUT LIMITATION, ANY CLAIM, REMEDY OR RIGHT OF SUBROGATION, REIMBURSEMENT, EXONERATION, CONTRIBUTION, INDEMNIFICATION, OR PARTICIPATION IN ANY CLAIM, RIGHT OR REMEDY OF ASSOCIATES AGAINST THE COMPANY OR ANY SECURITY WHICH ASSOCIATES NOW HAS OR HEREAFTER ACQUIRES; WHETHER OR NOT SUCH CLAIM, RIGHT OR REMEDY ARISES IN EQUITY, UNDER CONTRACT, BY STATUTE, UNDER COMMON LAW OR OTHERWISE.

No termination hereof shall be effective until the Guarantors deliver to Associates a written notice signed by them electing not to guarantee any new extension of credit that may be granted by Associates to the Company after its receipt of such notice, but such notice shall not affect the obligations of the guarantors hereunder as to any and all indebtedness existing at the time such notice is received. Each Guarantor hereby waives (i) notice of acceptance hereof and notice of extensions of credit given by Associates to the Company from time to time; (ii) presentment, demand, protest, and notice of nonpayment or protest as to any note or other evidence of indebtedness signed, accepted, endorsed or assigned to Associates by the Company, (iii) all exemptions and homestead laws; (iv) any other demands and notices required by law; and (v) any right to trial by jury. Associates may at any time and from time to time, without notice to or the consent of any Guarantor, and without affecting or impairing the obligation of any Guarantor: (a) renew, extend or refinance any part or all of the indebtedness of the Company or any indebtedness of its customers, or of any co-Guarantor (whether hereunder or under a separate instrument) or any other party; (b) accept partial payments of the indebtedness and apply such payments to any part of the indebtedness; (c) settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate, in any manner, any of the indebtedness, any Security, or any indebtedness of any co-Guarantor (whether hereunder or under a separate instrument) or any other party; (d) consent to the transfer of any Security; (e) bid and purchase at any sale of any of the Agreements or Security; and (f) exercise any and all rights and remedies available to Associates by law or agreement even if the exercise thereof may affect, modify or eliminate any rights or remedies which a Guarantor may have against the Company. Each Guarantor shall continue to be liable under this Guaranty, the provisions hereof shall remain in full force and effect, and Associates shall not be estopped from exercising any rights hereunder, notwithstanding (i) Associates' waiver of or failure to enforce any of the terms, covenants or conditions contained in any of the Agreements; (ii) any release of, or failure on the part of Associates to perfect any security interest in or foreclose, proceed against, or exhaust, any Security; or (iii) Associates' failure to take new, additional or substitute security or collateral for the indebtedness.

Each Guarantor agrees that Associates may bring any legal proceedings it deems necessary to enforce any or all of such Guarantor's obligations hereunder in any court in the State in which Associates' office administering the indebtedness is located; and service of process may be made upon such Guarantor by mailing a copy of the summons to such Guarantor at its address last known to Associates. All rights and remedies of Associates are cumulative and not alternative. Each provision of this Guaranty is intended to be severable. Any term or provision hereof declared to be contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining terms and provisions hereof.

IN WITNESS WHEREOF, the Guarantors have executed this Guaranty on _____

Witness _____

Witness _____

Guarantor's Federal Taxpayer Identification or Social Security Number is _____

Witness _____

Witness _____

Guarantor's Federal Taxpayer Identification or Social Security Number is _____

(Seal)

Guarantor _____ (L.S.)
(Name of individual, corporation or partnership)

By _____ Title _____

(If corporate guarantor, authorized officer must sign and show corporate title & partnership guarantor, general partner must sign and show "Partner" also name; if individual guarantor, show "individually" & name)

Address _____

Guarantor _____ (L.S.)
(Name of individual, corporation or partnership)

By _____ Deborah Manti _____ Title _____

(If corporate guarantor, authorized officer must sign and show corporate title & partnership guarantor, general partner must sign and show "Partner" also name; if individual guarantor, show "individually" & name)

Address _____

Note: Insert exact company names where appropriate, individual guarantors must sign guaranty without titles. Sign simply "John Smith, individually," not "John Smith, President." DO NOT USE THIS FORM if the guarantor resides or has a principal place of business in Kentucky.

PRO SE OFFICE
UNITED STATES DISTRICT OFFICE
EASTERN DISTRICT COURT
100 FEDERAL PLAZA
CENTRAL ISLIP, NEW YORK
11722

STINGS ST
ISLAND, N.Y.
10305

RECEIVED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★
JUN 05 2014
★
LONG ISLAND OFFICE