UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MANTIS TRANSPORTATION,
ALFRED J. MANTI,

                    Plaintiffs,

     -against-

PATRICIA KENNER, CT LINES d/b/a Campus
Coach, GENERAL ELECTRIC, CITI CAPITAL,

                    Defendants.
-------------------------------------------------------------X

**ORDER**
13-CV-6546 (SJF)(SIL)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ SEP 09 2014 ★

**LONG ISLAND OFFICE**

FEUERSTEIN, J.

On November 26, 2013, plaintiffs Alfred J. Manti ("Manti") and Mantis Transportation

(a/k/a Manti's Transportation, Inc.) ("MTI") commenced the instant action (the "Instant

Action")[1] against Patricia Kenner ("Kenner"), CT Lines d/b/a Campus Coach ("CT Lines"),

General Electric and CitiCapital.[2] Now before the Court are the motion to dismiss filed by CT

Lines and Kenner (the "CT Lines/Kenner MTD") [Docket Entry No. 14], and the GECC MTD,

---

[1]     Proceeding *pro se*, Manti commenced the Instant Action on behalf of himself and MTI. On December 13, 2013, the Court cautioned Manti "that a corporate entity such as Mantis Transportation cannot appear in federal court *pro se*," and "unless counsel files a notice of appearance to represent Mantis Transportation in this case, Mantis Transportation's claims will be dismissed without prejudice." (Order [Docket Entry No. 7], 1 n.1). No notice of appearance has been filed by counsel to represent MTI. Accordingly, MTI's claims are dismissed without prejudice. *See Grace v. Bank Leumi Trust Co. of N.Y.*, 445 F.3d 180, 192 (2d Cir. 2006) (explaining rule is "to dismiss any action or motion filed by a corporation purporting to act *pro se*"); *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007) (*per curiam*) ("[A] layperson may not represent a separate legal entity such as a corporation."). Therefore, the Court will address the claims in the Instant Action as brought only by Manti, the sole remaining plaintiff.

[2]     While named as "General Electric" and "CitiCapital" in the caption of the Instant Action, the correct entities are General Electric Capital Corporation ("GECC") and Citicapital Commercial Corporation ("Citicapital"), respectively. (Memorandum of Law in Support of GECC and GE Capital Commercial, Inc.'s Motion to Dismiss ("GECC MTD") [Docket Entry No. 26-1], at 1 n.1-2). In August 2008, Citicapital merged into Citicorp Leasing, Inc., which changed its name to GE Capital Commercial, Inc. (*Id.* at 1 n.2). Together with GECC, GE Capital Commercial, Inc. has moved to dismiss the Instant Action (the "GECC MTD"). [Docket Entry No. 26].

1

both of which are brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure ("Rule 12(b)(1)" and "Rule 12(b)(6)," respectively), the motion for sanctions pursuant

to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") filed by CT Lines and Kenner

(the "CT Lines/Kenner Sanctions Motion") [Docket Entry No. 15], and Deborah Manti's motion

to intervene ("Motion to Intervene") [Docket Entry No. 33]. For the reasons that follow, the

GECC MTD, the CT Lines/Kenner MTD, and the CT Lines/Kenner Sanctions Motion are

granted, and the Motion to Intervene is denied as moot.

## I.    Background[3]

### A.    Parties

MTI is a New York corporation which, until June 1998, was engaged in the business of

---

[3]    The complaint (the "Complaint"), which does not clearly lay out the facts underlying the Instant Action, reflects Manti's dissatisfaction with the decisions in three (3) prior actions (the "Prior Actions") based upon the same underlying facts: (1) *Manti Transportation, Inc. v. Associates Commercial Corp.*, No. 00-CV-6807 (FB)(RML) (E.D.N.Y.) ("*Manti I*"); (2) *Manti's Transportation, Inc. v. Citicapital Commercial Corp.*, No. CV-06-1699 (SJF)(RML) (E.D.N.Y.) ("*Manti II*"); and (3) *Manti's Transportation, Inc., et al. v. C.T. Lines, Inc., et al.*, Index No. 101575/05 (N.Y. Sup. Richmond Cnty.) ("Manti State Action"). "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). In light of Manti's *pro se* status, the Court looks beyond the facts set forth in the Complaint, and considers Manti's oppositions to the pending motions. *See Gill v. Mooney*, 824 F.3d 192, 195 (2d Cir. 1987) (considering plaintiff's affidavit submitted in opposition to motion to dismiss in reviewing whether *pro se* plaintiff had adequately pleaded a cause of action); *Wilson v. Med. Unit Officials at George R. Vierno Ctr. Jail at 09-09 Hazen Street*, No. 10-CV-1438, 2011 WL 6780934, at *2 n.6 (E.D.N.Y. Dec. 27, 2011) ("In exercising its obligation to construe liberally the pleadings of *pro se* plaintiffs, the court may consider facts set forth in plaintiff's opposition papers." (citation omitted)). Accordingly, the facts underlying the Instant Action are taken from decisions in the Prior Actions, the Complaint, Manti's oppositions to the CT Lines/Kenner MTD ("Opp. to CT Lines/Kenner MTD") [Docket Entry No. 14-5], the CT Lines/Kenner Sanctions Motion ("Opp. to CT Lines/Kenner Sanctions Mot.") [Docket Entry No. 15-5], and the GECC MTD ("Opp. to GECC MTD") [Docket Entry No. 26-5], and the exhibits submitted therewith. The Court also considers the following documents presented by Manti, cited hereafter as "Manti Ex. _": (i) Exhibits A through Z submitted with the Complaint [Docket Entry No. 1-2]; (ii) Exhibits AA through JJ submitted with Manti's oppositions to the CT Lines/Kenner MTD and the CT Lines/Kenner Sanctions Motion [Docket Entry Nos. 14-6, 15-6]; (iii) Exhibits KK through WW submitted with Manti's opposition to the GECC MTD [Docket Entry No. 26-6]; (iv) Exhibits XX through CCC submitted via letter filed with the Court on April 29, 2014 [Docket Entry No. 27]; (v) Exhibits DDD through FFF submitted with the Motion to Intervene [Docket Entry No. 33-1]; and (vi) Exhibits FFF through KKK submitted with Manti's reply to the defendants' oppositions to the Motion to Intervene [Docket Entry No. 33-7].

providing commuter bus service in the New York City area. (*Manti II*, 2008 WL 977192, at *1 (E.D.N.Y. Apr. 9, 2008)). Manti is the president and sole shareholder of MTI. (*Id.*). At the time of the relevant transactions underlying the Instant Action, Associates Commercial Corporation ("Associates") provided commercial financing services to prospective purchasers of buses.[4] (*Id.*). CT Lines is a New York corporation in the business of operating and selling buses. (Aff. of Adam N. Newman in Supp. of CT Lines/Kenner MTD ("Newman Aff."), Ex. B (Compl., Manti State Action) [Docket Entry No. 14-2], ¶ 4). Kenner is an officer of CT Lines. (*Id.* ¶ 6).

**B.    Factual Background**

In November 1997, MTI purchased a fleet of buses from a third-party vendor, which was financed by a loan from Associates pursuant to a security agreement dated March 31, 1998. (*Manti II*, 2008 WL 977192, at *1). Following the purchase, Manti discovered that the buses were defective and unusable, but his repeated demands that the third-party vendor repair the buses went unheeded. (*Id.*). In June 1998, Manti contacted Lawrence Shute ("Shute"), an Associate's branch manager, to notify him that due to the unusable buses, MTI was unable to make timely payments on the various security agreements between MTI and Associates. (*Id.*). MTI returned the fleet of buses to the third-party vendor. (*Id.*). Without the buses or a new loan from Associates, MTI ceased operations. (*Id.*).

On November 18, 1999, approximately fifteen (15) months after MTI returned the buses to the third-party vendor, Associates agreed to provide MTI with a new loan and to refinance MTI's existing debt, and MTI and Associates executed the following agreements: (i) a

---

[4]    On November 30, 2000, Associates was acquired by Citigroup, Inc. through merger into Citigroup's subsidiary Citicapital Commercial Corporation (*id.*), which, as explained above, merged into Citicorp Leasing, Inc., which changed its name to GE Capital Commercial, Inc. (*Id.*). To avoid confusion, the Court refers to the entities in the Instant Action (both GECC and GE Capital Commercial, Inc., collectively) as "GECC," but refers to the name of the entity being used at the time of the relevant actions described herein or the name of entity sued in the Prior Actions.

modification agreement governing the refinancing of MTI's existing debt ("Modification Agreement"); (ii) a security agreement governing a new loan to finance the purchase of two (2) buses, serial numbers S15322 (the "1980 Crusa Bus") and 1M89CM8A78P036640 (the "1981 MCI Bus"), from CT Lines (the "November 18, 1999 Security Agreement") (Manti Ex. G); and (iii) a general release (the "Release") (Decl. of Sarah E. O'Connell in Supp. of GECC MTD ("O'Connell Decl."), Ex. 2 (Release) [Docket Entry No. 26-3]).  (*Manti I*, 2002 WL 369807, at *1 (E.D.N.Y. Mar. 28, 2002)).

Pursuant to the November 18, 1999 Security Agreement, MTI agreed to pay Associates one hundred eighty thousand four hundred sixty dollars and thirty-two cents ($180,460.32) in monthly installments beginning on January 2, 2000, and Associates agreed to disburse one hundred thirty-three thousand sixty-six dollars ($133,066.00) to CT Lines. (Manti Ex. G).  The Release provided that it was executed in consideration for, *inter alia*, the November 18, 1999 Security Agreement and MTI's performance of all of its obligations thereunder.  (O'Connell Decl., Ex. 2).  The Release states, *inter alia*:

> [MTI] does hereby release and discharge [Associates and its] . . . successors in interest . . . of and from any and all manners of action, causes of action, suits, debts, obligations, liabilities, claims, and/or demands whatsoever, whether at law or in equity, known or unknown, which [MTI] now has, can have, ever had . . . for or by reason of any cause, matter or thing whatsoever including, without limitation, the execution, delivery and performance of the Existing Security Agreements.

> \*     \*     \*

> In the event legal proceedings are instituted to enforce or sue the breach of this Agreement, the prevailing party therein shall be entitled to recover its reasonable attorney's fees and costs of suit in such proceeding.

> \*     \*     \*

4

> The parties hereto warrant and represent that they have carefully
> read this Agreement, know the contents hereof, have been advised
> by counsel, and that the same is being signed of their own free
> will.

(*Id.* ¶¶ 2, 5, 6).

In compliance with the November 18, 1999 Security Agreement, Associates provided the
additional financing to MTI, by disbursing one hundred thirty-three thousand sixty-six dollars
($133,066.00) to CT Lines (the "November 1999 Transaction"), and modified the terms of
plaintiff's previous loans as required by the Modification Agreement. (*Manti I*, 2002 WL
369807, at *2).  On August 21, 2000, MTI and Associates rolled MTI's debt over into two (2)
new security agreements (the "August 21, 2000 Security Agreements").  (*Id.*)

### C.    The Prior Actions

#### 1.    *Manti I*

October 17, 2000, MTI commenced the *Manti I* action against Associates in the Supreme
Court of the State of New York, Kings County, alleging breach of contract, fraud, unjust
enrichment, and tortious interference with prospective business advantage.[5]  (*Manti I*, 2002 WL
369807, at *1).  On November 14, 2000, Associates removed the case to this Court pursuant to
28 U.S.C. §§ 1441 and 1446 based on diversity jurisdiction.  (*Id.* at *2; Notice of Removal,
*Manti I* (E.D.N.Y. Nov. 14, 2000), ECF. No. 1).  On November 29, 2000, Associates filed its
answer, raising the Release as a complete affirmative defense to MTI's claims, and asserting
counterclaims for: (i) breach of the August 21, 2000 Security Agreements in the total amount of
one million two hundred ninety-six thousand five hundred ninety-one dollars and thirty-one cents

---

[5]    As noted by Judge Block in his March 8, 2002 order in *Manti I* (the "Judge Block *Manti I*
Order"), "[a]ll of [MTI's] claims arise from its theory that defendant breached its oral agreement to
'immediately provide [MTI] with the necessary financing to purchase a new fleet of buses' by refusing to
provide the additional financing for fifteen months after plaintiff returned the buses." (*Manti I*, 2002 WL
369807, at *2 (quoting Verified Complaint at ¶¶ 12-13)).

($1,296,591.31), plus interest and consequential damages, and (ii) breach of the Release. (*Manti I*, 2002 WL 369807, at *2; Answer, *Manti I* (E.D.N.Y. Nov. 29, 2000), ECF No. 4). On January 22, 2001, MTI responded to Associate's counterclaims, asserting, *inter alia*, that "[p]laintiff's signatures on certain of the documents were obtained by fraud, duress, and/or mistake." (Reply to Countercls., *Manti I* (E.D.N.Y. Jan. 22, 2001), ECF No. 6).[6]

On May 7, 2001, Associates moved for summary judgment. (Summ. J. Mot., *Manti I* (E.D.N.Y. May 7, 2001), ECF No.16). On May 25, 2001, Associates moved for sanctions pursuant to Rule 11. (Rule 11 Mot., *Manti I* (E.D.N.Y. May 22, 2001), ECF No. 22). On June 4, 2001, MTI opposed Associates' motions, and cross-moved pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure to withdraw the complaint without prejudice on the ground that MTI intended to file a bankruptcy petition. (*Manti I*, 2002 WL 369807, at *3). On June 21, 2001, MTI advised the Court by letter that it would not be filing for bankruptcy, but did not withdraw the Rule 41(a)(2) motion. (*Id.*)

On March 8, 2002, the Judge Block *Manti I* Order was issued, granting Associates' motion for summary judgment, denying Associates' Rule 11 motion for sanctions, and denying MTI's Rule 41(a)(2) motion to withdraw the complaint without prejudice.[7] (*Id.*). Specifically, Judge Block rejected MTI's contention that it should not be bound by the Release, the terms of which "clearly bar any and all claims [MTI] may have had against [Associates]." (*Id.*). Judge

---

[6]     This document is not electronically available on the ECF docket for *Manti I*. However, it is attached as Exhibit L to the affidavit of Bennet Katz, submitted by Citicapital in support of its motion to dismiss the *Manti II* action. (Katz Aff., Ex. L, *Manti II* (E.D.N.Y. Apr. 11, 2007), ECF No. 47-13).

[7]     In denying MTI's cross-motion to withdraw, Judge Block explained that "[s]ince [MTI] has no defense to the [R]elease and has disavowed its prior explanation for the need to dismiss – to allow it to file for bankruptcy – it appears to the Court that its true motivation in invoking Rule 41(a)(2) was simply to delay the inevitable judgment day." (*Id.* at *5). Judge Block stated that the Court "will not sanction plaintiff's eleventh-hour stratagem." (*Id.*).

Block held that "[i]n light of Manti's admission that he signed the release, the clear and unambiguous language of the release, and [MTI's] failure to put forth cognizable facts to make out a fraud, duress or misrepresentation defense, . . . the [R]elease is effective and bars all of [MTI's] claims." (*Id.*). Judge Block concluded that "[w]hile the [R]elease does not include an explicit covenant not to sue, the inclusion of the prospective language regarding the entitlement to attorney's fees and costs creates and implied covenant not to sue," which MTI breached by commencing *Manti I.* (*Id.* at *4). Judge Block held that Associates was entitled to an award of attorney's fees and costs on its counterclaim for MTI's breach of the Release. (*Id.* at *5).

With respect to MTI's breach of the August 21, 2000 Security Agreements, Judge Block noted that "Manti admits that he signed [the August 21, 2000] Security Agreements," and that MTI failed to dispute that was in default or challenge the amount that Associates claimed it was due under the August 21, 2000 Security Agreements. (*Id.* at *4). Accordingly, Judge Block awarded Associates the total amount sought – one million two hundred ninety-six thousand five hundred ninety-one dollars and thirty-one cents ($1,296,591.31) – plus nine percent (.09) per annum from the dates of the default. (*Id.* at **4, 5). Judge Block instructed MTI and Associates "to attempt to reach an agreement on the dates of default [of the August 21, 2000 Security Agreements] and the amount of [Associate's] attorney's fees and costs." (*Id.* at *5).

On May 31, 2002, MTI stipulated, *inter alia*, to the date of default of the August 21, 2000 Security Agreements, and the amount of attorney's fees and costs it would pay to Associates for its breach of the Release. (Stipulation, *Manti I* (E.D.N.Y. June 14, 2002), ECF No. 66; Katz Aff., Ex. J, *Manti II* (E.D.N.Y. Apr. 11, 2007), ECF No. 47-11). On June 17, 2002, final judgment was entered against MTI (the "*Manti I* Judgment"), directing MTI to pay one million two hundred ninety-six thousand five hundred ninety-one dollars and thirty-one cents

7

($1,296,591.31), plus nine percent (.09) interest per annum from October 1, 2000, for breaching the August 21, 2000 Security Agreements, and one hundred six thousand nine hundred thirty-six dollars and twenty-two cents ($106,936.22) in attorney's fees and costs for breaching the Release. (Judgment, *Manti I* (E.D.N.Y. June 17, 2002), ECF No. 67).  It is undisputed that the *Manti I* Judgment remains unsatisfied, and that MTI did not appeal or move for reconsideration of the Judge Block *Manti I* Order or the *Manti I* Judgment, or move to vacate the *Manti I* Judgment within one (1) year of the date of its entry pursuant to subsections one (1) through three (3) of Rule 60(b) of the Federal Rules of Civil Procedure. (*Manti II*, 2008 WL 977192, at *3).

### 2. *Manti II*

On April 12, 2006, almost four (4) years after the *Manti I* Judgment was entered, MTI and Manti ("plaintiffs"), through their counsel, commenced the *Manti II* action against, *inter alia*, "CitiCapital Commercial Corporation, f/k/a Associates Commercial Corporation,"[8] asserting numerous claims for, *inter alia*, RICO violations, breach of contract, tort, and fraud. (Compl., *Manti II* (E.D.N.Y. Apr. 12, 2006), ECF No. 1).  On November 15, 2006, plaintiffs filed an amended complaint against Citicapital, asserting only one claim pursuant to the "savings clause" of Rule 60(b) of the Federal Rules of Civil Procedure,[9] seeking to vacate the Judge Block

---

[8]     Plaintiffs also named GECC, Shute, Lawrence J. Pelka, John Umberger, Road Ready Registration, Inc., and Susan Banks-Nickel as defendants in the *Manti II* action. (Compl., *Manti II* (E.D.N.Y. Apr. 12, 2006), ECF No. 1).  Plaintiff voluntarily dismissed the action as against all named defendants, except Citicapital, by notice entered on November 15, 2006. (Voluntary Dismissal, *Manti II* (E.D.N.Y. Nov. 15, 2006), ECF No. 36).

[9]     Pursuant to amendment, which became effective on December 1, 2007, the "savings clause" formerly contained in Rule 60(b) now appears in Rule 60(d), and is virtually identical in all relevant respects.

*Manti I* Order and the *Manti I* Judgment on the ground of fraud upon the court.[10] (Am. Compl.,

*Manti II* (E.D.N.Y. Nov. 15, 2006), ECF No. 37). On April 11, 2007, Citicapital moved to

dismiss the amended complaint pursuant to Rule 12(b)(6). (Dismiss Mot., *Manti II* (E.D.N.Y.

Apr. 11, 2007), ECF No. 47). On July 13, 2007, Citicapital moved for sanctions pursuant to

Rule 11. (Rule 11 Mot., *Manti II* (E.D.N.Y. July 13, 2007), ECF No. 56).

On April 9, 2008, this Court issued the *Manti II* Order, granting Citicapital's motion to

dismiss and denying Citicapital's Rule 11 motion for sanctions. (*Manti II*, 2008 WL 977192, at

*1). The Court explained that "[a]s plaintiffs filed this action almost four (4) years after the date

that judgment was entered in *Manti I*, legal relief under Rule 60(b) by way of motion in that case

is time barred" by the "one (1) year limitation period from the date of entry of judgment to move

for relief under subsections one (1) through three (3)," but not for "independent actions seeking

to vacate a final order or judgment under the savings clause of Rule 60."[11] (*Manti II*, 2008 WL

977192, at *5). However, the Court found that, "at the most, plaintiffs allege fraud committed

by defendant on them, not the court, which can only be brought pursuant to Rule 60(b)(3) and

which is, thus, time-barred." (*Id.* at *8). Furthermore, the Court noted that "'allegations of

nondisclosure during pretrial discovery do not constitute grounds for an independent action

under Fed.R.Civ.P. 60(b).'" (*Id.* (quoting *Gleason v. Jandrucko*, 860 F.2d 556, 559-60 (2d Cir.

---

[10]      As this Court explained its April 9, 2008 order in *Manti II* (the "*Manti II* Order"), "[s]pecifically,
plaintiffs contend, in effect, that [Associate's] representations in *Manti I* that MTI had title to the buses in
issue and that [Associates] had liens on the title to those vehicles were material misrepresentations and
that since MTI never had title to the vehicles as a result of [Associates'] conduct and [Associates] never
had recorded liens on those vehicles, defendant breached the August 21, 2000 security agreements and,
thus, was not entitled to judgment on its counterclaims." (*Manti II*, at *4).

[11]      Plaintiffs acknowledged this in their amended complaint, noting that they could not "proceed[] by
motion under Rule 60(b) in the prior action" "[s]ince more than one year has passed from the entry of the
operative Order and Judgment," and therefore, commenced a "plenary action" instead. (Am. Compl. ¶ 1,
*Manti II* (E.D.N.Y. Nov. 15, 2006), ECF No. 37).

1988))). Thus, the Court held that "plaintiffs' allegations that defendant failed to disclose its purported conduct committed after commencement of *Manti I*, i.e., (1) that it filed lien applications and applications for post-repossession titles in other states, (2) that it held the titles to the buses, and (3) that it disposed of the repossessed buses, are insufficient to justify relief under the 'savings clause' of Rule 60(b)." (*Id.*).

The Court concluded that plaintiffs had failed to satisfy the onerous burden of proof to succeed on a Rule 60 claim. Specifically, the Court held that plaintiffs failed to show "that their own carelessness did not create the situation for which they now seek equitable relief," given that "plaintiffs were aware of the possibility of fraud committed by [Associates] prior to the entry of final judgment in [*Manti I*]" and "plaintiffs admittedly knew during the course of the proceedings in *Manti I* that they did not have certificates of title for the buses purchased at issue." (*Id.* at \*6). Furthermore, the Court determined that "the evidence upon which plaintiffs rely to purportedly establish their claim that [Associates] concealed the titles from the court in *Manti I* is not 'new' for purposes of Rule 60(b)" because it "could have been discovered earlier with due diligence." (*Id.*). Had plaintiffs "investigated their claims for fraud, which they admittedly suspected during the course of *Manti I*," plaintiffs would have been able to file a "timely motion to vacate the final judgment in *Manti I* pursuant to Rule 60(b)(3) within one (1) year from the date the judgment was entered." (*Id.* at \*7). In denying plaintiffs' motion to vacate the Judge Block *Manti I* Order and the *Manti I* Judgment, the Court also considered that plaintiffs had failed to "explain why they did not seek discovery for the approximate six (6) month period between the filing of *Manti I* and [Associate's] motion for summary judgment." (*Id.* at \*8).

With respect to Citicapital's Rule 11 motion for sanctions, the Court "decline[d] to impose monetary sanctions" because "it cannot be said that the amended complaint was entirely

10

frivolous or made for a completely improper purpose." (*Id.* at *10). However, the Court warned "plaintiffs and their counsel . . . that any further attempts to litigate in this Court the matters of which they complain in this action, and of which they complained in *Manti I*, may result in the imposition of sanctions, including monetary sanctions and an injunction from filing future lawsuits relating to the same transactions and occurrences." (*Id.*).

### 3. Manti State Action

On May 16, 2006, MTI and Manti commenced the Manti State Action in the Supreme Court of the State of New York, County of Richmond, against CT Lines, Bertram J, Askwith a/k/a Mike Long ("Askwith"), and Kenner, asserting, *inter alia*, claims for fraud, tortious interference with business relations, and tortious interference with contract.[12] (Newman Aff., Ex. B (Compl., Manti State Action). On February 28, 2008, Judge Joseph L. Maltese issued a decision (the "February 2008 Judge Maltese Decision")[13] denying CT Lines', Askwith's, and Kenner's motion for summary judgment. (Manti Ex. L (Order, Manti State Action (N.Y. Sup. Richmond Cnty. Feb. 18, 2008)).[14] On November 10, 2008, Judge Maltese denied CT Lines' Askwith's, and Kenner's motion for leave to renew the branches of their prior motion for summary judgment that were denied in the February 2008 Judge Maltese Decision. (Manti State

---

[12]     Plaintiffs filed the Manti State Action less than five (5) weeks after commencing *Manti II*.

[13]     At the time the February 2008 Judge Maltese Decision was issued, the *Manti II* action remained pending. This Court's *Manti II* Order dismissing *Manti II* was issued on April 9, 2008.

[14]     While the February 2008 Judge Maltese Decision granted CT Lines, Askwith, and Kenner's summary judgment motion in part, dismissing plaintiffs' third cause of action (fraudulent misrepresentation of defendants' ownership of and right to title and register the vehicles pursuant to N.Y. Vehicle and Traffic Law § 392), their summary judgment motion was denied with respect to plaintiffs' first (fraudulent inducement to enter a contract to purchase vehicles), second (fraudulent concealment of a scheme to prevent plaintiffs from operating vehicles purchased from defendants), fourth (continuing fraudulent concealment of the use of vehicles by defendants), fifth (continuing tortious interference with business), and sixth (continuing tortious interference with contract) causes of action. (Manti Ex. L).

Action, 68 A.D.3d 937, 939, 892 N.Y.S.2d 432, 2009 N.Y. Slip. Op. 09436 (N.Y.A.D. 2d. Dep't

Dec. 15, 2009)).

On December 15, 2009, the Appellate Division, Second Department (the "Appellate

Division") issued a decision (the "Appellate Division Decision"), following the appeals by CT

Lines, Askwith, and Kenner of the February 2008 Judge Maltese Decision and the November 10,

2008 order. (*Id.* at 938-39, 892 N.Y.S.2d 432). The Appellate Division Decision set forth the

following facts:

> This action arises out of a contract of sale under which [MTI]
> purchased two buses from [CT Lines]. The transaction was
> financed by [Associates], a nonparty. At the instruction of
> Associates and the plaintiffs, CT Lines delivered to Associates the
> documentation necessary to obtain certificates of title to the
> vehicles in MTI's name, and the vehicles were left in the
> possession of CT Lines until title, license plates, and insurance
> could be obtained on MTI's behalf. Associates, however, failed to
> deliver the documents to the New York State Department of Motor
> Vehicles and MTI never obtained title to the vehicles, and never
> attempted to retrieve them from CT Line's lot.

(*Id.* at 939, 892 N.Y.S.2d 432). The Appellate Division affirmed the dismissal of plaintiffs' third

cause of action, and reversed the denial of, and granted to CT Lines, Askwith, and Kenner,

summary judgment on plaintiffs' first, second, fourth, fifth, and sixth causes of action. (*Id.* at

938, 892 N.Y.S.2d 432).

**D.    The Instant Action**

On November 26, 2013, Manti commenced the Instant Action against Kenner, CT Lines,

GECC, seeking, *inter alia*, (i) "a judgement [sic] against CitiCapital and GE for $50,000,000.00

for hiding evidence before you ruled on dismissing my case," (ii) "a judgmement [sic] against

CT Lines d/b/a Campus Coach and its owner Patricia Kenner of $10,000,000.00 for stealing 2

buses that were never repossessed but were registered yearly after they were paid $133,000.00

12

and used as their own continuously from 11/18/1999 to 8/8/2009 and keeping the sale price," and (iii) to "[h]ave Judge Feuerstein open up my old case and let me take depositions." (Compl. [Docket Entry No. 1], at 1).

## 1. **Manti's "Newly Discovered Evidence"**

Manti alleges that CT Lines and Kenner sold the 1980 Crusa Bus in 2008 and the 1981 MCI Bus in 2009. (Opp. to CT Lines/Kenner MTD, at 2, 20; Opp. to GECC MTD, at 12). Manti argues that he has obtained "newly discovered evidence that was hidden in the files of the defendant GE Capital" that "can prove how these huge companies covered up crimes committed by its employees and made a mockery of the Federal Court system by hiding evidence that was never intended to see the light of day." (Compl., at 2).

### a. **1980 Crusa Bus**

Specifically, Manti presents the following documents regarding the 1980 Crusa Bus: (i) a copy of the "long-hidden bus title" (Compl., at 3) (the "1980 Crusa Bus Title") (Manti Exs. B, F); and (ii) an "Oklahoma Lien Entry Form" (the "Oklahoma Lien") (Manti Ex. C).

According to Manti, in November 2011, he "googled GE Capital, not really expecting anything that would be of any use" and "picked the first" of the "many websites phone numbers" generated by his search. (Compl., at 3). He called the "first" number and "received a list of categories," "[t]he fourth [of which] stated that if [he] want the title division [he] should call a certain number." (*Id.*). Manti called the number two (2) days later, and was "surprised when a young-sounding woman picked up the phone and asked if she could help me." (*Id.*). Manti "told her that [he] needed to clear up some matters" and "wondered if GE still had possession of the two titles," which "were the only two titles we haven't accounted for of the 18 buses we financed." (*Id.*). Manti contends that "[s]he asked for my name and address and said, 'If I can

13

release it to you, I will,'" and that he then "hung up and forgot about the whole thing." (*Id.*).

Manti alleges that nine (9) days later, on December 2, 2011, he received a federal express

package from a "low-level GE employee" named Nicole, which included the 1980 Crusa Bus

Title and the Oklahoma Lien.[15] (*Id.* at 2-3, 5; Manti Ex. B (Front of 1980 Crusa Bus Title), Ex. F

(Back of 1980 Crusa Bus Title), Ex. C (Oklahoma Lien)).

### i. **1980 Crusa Bus Title**

The front of the 1980 Crusa Bus Title submitted by Manti indicates that the certificate of

title was issued on April 30, 1997 to CT Lines, located in Englewood, New Jersey. (Manti Ex. B

(Front of 1980 Crusa Bus Title)). The front of the 1980 Crusa Bus Title includes a stamp which

reveals that it was received by Kenney Newey of the Oklahoma Department of Motor Vehicles

---

[15]    Manti contends that "[w]hen Nicole [] sent me the [1980 Crusa Bus Title] in December of 2011, I knew immediately her days being employed by GE were numbered." (Opp. to GECC MTD, at 3). Nicole was terminated effective February 6, 2012 for "unprofessional and disruptive behaviors." (Compl., Ex. U (Findings & Recommendation, *Stamp v. Gen. Elec. Capital Corp.*, No. CV-12-123-BLG-DLC (D. Mont. Sept. 26, 2013), at 9). Nicole brought an action against GECC for wrongful discharge in the United States District Court for the District of Montana, Billings Division ("District of Montana"). (*Id.*, at 1). On September 26, 2013, United States Magistrate Judge R. Keith Strong entered Findings and Recommendations, in which he concluded that GECC's motion to compel had been erroneously denied, and stated the following facts:

> In November of 2011, Stamp received a Service Request to release a title
> to [MTI] in New York. She remembers being confused by this Service
> Request because the documentation was unusual. There was no original
> title issued directly to [MTI], only a title endorsed on the back to [MTI]
> by the prior owner. And although the endorsed title was issued in New
> York, the file did not include an original New York title with a lien to
> GECC or its predecessor. Finally, although the file contained paperwork
> filed in Oklahoma to obtain a lien, there was no Oklahoma certificate of
> title in the file. Stamp could not confirm whether GECC sill [sic] had a
> lien on the asset in Oklahoma or whether the asset was still title in New
> York, but she nonetheless delivered the certificate of title and lien
> documents to Alfred Manti/[MTI] in New York.

(*Id.*, at 8). On October 23, 2013, Magistrate Judge Strong's Findings and Recommendations were adopted in full by the District of Montana. (*Stamp v. Gen. Elec. Capital Corp.*, No. CV-12-123-BLG-DLC, 2013 WL 5755686, at *1 (D. Mont. Oct. 23, 2013)). According to Manti, Nicole settled her wrongful termination suit with GECC. (Compl., at 7-8).

on January 29, 2001. (*Id.*). The back of the 1980 Crusa Bus Title submitted by Manti indicates that the title was transferred from seller CT Lines to buyer MTI, and includes the signatures of Michael Long on behalf of seller CT Lines, and Manti on behalf of MTI, and a typed-in date of August 21, 2000. (Manti Ex. F (Back of 1980 Crusa Bus Title)). According to Manti, even though he bought the 1980 Crusa Bus, and both he and "Bert Askwith (a/k/a Mike Long), then president of CT Lines," signed the 1980 Crusa Bus Title on November 18, 1999, "the back of the actual title . . . has the date of August 21, 2000 typed in," which was "nine months after [Manti] bought the bus, [and] was not there when [he] signed the title." (Opp. to GECC MTD, at 11). Manti further states that "[t]he adding of this date, not by [Manti] and before the papers were delivered to [him] by Nicole [] in 2011, has to have been typed in by someone at Associates/Citicapital/GECC before sending them to Oklahoma on January 19, 200[1]." (*Id.*). Manti alleges that unlike the 1980 Crusa Bus Title, "[t]he dates on the back of the 11 titles [he] received in February 2006 all had the correct sale date on the back." (*Id.*).

    ii.   **Okahoma Lien**

The Oklahoma Lien submitted by Manti lists the debtor as MTI, the secured party as Associates, and the date of the security agreement as November 18, 1999. (Manti Ex. C (Oklahoma Lien)). The Oklahome Lien also includes a signature, dated January 19, 2001, of a representative of Associates, and indicates that it was received by Kenney Newey of the Oklahoma Department of Motor Vehicles on January 29, 2001. (*Id.*) Manti contends that Associates' liens were never recorded on New York titles, and instead, "[in January of 2001,] Citicapital . . . did file these original papers, in Oklahoma, to make it look like they had liens on the buses." (Opp. to GECC MTD, at 9).

b. **1981 MCI Bus Documents**

Manti presents the following "new" documents regarding the 1981 MCI Bus: (i) a copy

of the "original title documents for the 1981 MCI [Bus]" (Opp. to GECC MTD, at 15) (the "1981

MCI Bus Original Title") (Manti Exs. KK, LL); (ii) a letter, dated August 5, 2009, purportedly

signed by Kenner (the "August 5, 2009 Letter") (Manti Ex. N); and (v) a copy of the "Clean

Replacement Title" (Opp. to CT Lines/Kenner MTD, at 3) for the 1981 MCI Bus (the "1981

MCI Bus Replacement Title") (Manti Ex. D).

i. **1981 MCI Bus Original Title**

According to Manti, after he received the 1980 Crusa Bus Title in December 2011, he

"tried to have the [1981 MCI Bus Original Title] released in the same manner." (Opp. to GECC

MTD, at 3). Manti claims that in January 2014, he was "[f]inally" able to obtain a copy of the

1981 MCI Bus Original Title from a "another low-level [GECC] employee" "in Cedar Rapids

Iowa."[16] (*Id.*, at 5, 13). Manti states "this [1981 MCI Bus Original Title] is the other title that

was part of the November 18, 1999 original bus purchase." (*Id.*).

The front of the 1981 MCI Bus Original Title submitted by Manti indicates that the

certificate of title was issued on February 1, 1982 to CT Lines, located in Englewood Cliffs, New

Jersey. (Manti Ex. KK (Front of 1981 MCI Bus Original Title)). The front of the 1981 MCI Bus

Original Title also includes a stamp, which reveals that it was received by Kenneth Newey on

January 29, 2001. (*Id.*). The back of the 1981 MCI Bus Original Title submitted by Manti

---

[16]     Manti admits that "[w]hen GECC and their counsel filed their motion to dismiss, they did not
know [Manti] had received a copy of the [1981 MCI Bus Original Title]," and that he "did not include
this information in [his] response to Patricia Kenner and CT Lines dismissal motion." (Opp. to GECC
MTD, at 5, 13). According to Manti, he declined to include this information "because [he] was afraid that
the GECC employee . . . who sent it might get fired," and he "had hoped that GECC's lawyers might talk
to [him] about settling this case before [they] got too far into the lawsuit, but since they are going ahead
with this motion to dismiss, and are threatening sanctions, [Manti] [has] let them know that [he] do[es]
have a copy of the second title despite their two year refusal to at least provide a copy." (*Id.* at 13).

16

indicates that the title was transferred to MTI, and includes the signatures of Michael Long on behalf of the seller, CT Lines, and Manti on behalf of MTI. (Manti Ex. LL (Back of 1980 MCI Bus Original Title)). Notably, the signatures on the back of the 1981 MCI Bus Original Title are not dated. (*Id.*).[17]

      ii.    **August 5, 2009 Letter and 1981 MCI Bus Replacement Title**

The August 5, 2009 Letter, submitted by Manti, appears to be from Kenner and written on CT Lines' letterhead, "in connection with [CT Lines'] request for a 2 day registration," and states that CT Lines is the owner of the 1981 MCI Bus. (Manti Ex. N (August 5, 2009 Letter)).

The 1981 MCI Bus Replacement Title, submitted by Manti as Exhibit D to the Complaint,[18] indicates that it was issued on August 13, 2009 to CT Lines, located in Paramus, New Jersey. (Manti Ex. D (1981 MCI Bus Replacement Title)). The 1981 MCI Bus Replacement Title states "no liens recorded," and that "this is a duplicate certificate and may be subject to the rights of a person under the original certificate." (*Id.*). Manti alleges that the 1981 MCI Bus Replacement Title was "issued by the NYS Department of Motor Vehicles . . . in response to Patricia Kenner's [August 5, 2009] letter." (Opp. to CT Lines/Kenner MTD, at 3).

---

[17]    Manti contends that the 1981 MCI Bus Original Title lacks a date because "[t]here was no need for Associates/Citicapital/ GECC to bother, the title wasn't going anywhere except to stay in GECC's vault, and the bus wasn't going anywhere except to stay with CT lines." (Opp. to GECC MTD, at 12).

[18]    As Adam Newman ("Newman"), counsel for CT Lines and Kenner, points out, and Manti concedes, a copy of the 1981 MCI Bus Replacement Title was previously submitted as Exhibit CC to Manti's affidavit, dated September 18, 2009, in the Manti State Action. (Newman Aff., Ex. D; Opp. to CT Lines/Kenner MTD, at 2-3, 19). In the "Affidavit of Alfred J. Manti in Reply to New Matters Claimed by Patricia Kenner and CT Lines" ("Manti Sur-Reply to CT Lines/Kenner MTD"), which was improperly filed on February 26, 2014 after the fully briefed CT Lines/Kenner MTD and CT Lines/Kenner Sanctions Motion were submitted, Manti admits that he obtained the August 5, 2009 Letter and the 1981 MCI Bus Replacement Title at the same time in 2009. (Manti Sur-Reply to CT Lines/Kenner MTD [Docket Entry No. 16], at 2 ("I personally went to Nimco a few weeks after the bus was dropped off and asked for the papers that Campus Coach employees left when the vehicle was delivered to them. I was given the letter signed by Patricia Kenner and also the title Campus Coach must have received from the NYS DMV when she put plates on the bus to drive to New Jersey.").

Manti has also submitted a check, dated September 2, 2009, for one thousand dollars ($1,000.00) made payable to Campus Coach Lines, which Manti alleges "CT was paid for the [1981 MCI Bus]." (Manti Ex. E (Check); Opp. to CT Lines/Kenner MTD, at 5).[19]

### 2. Pending Motions

On February 18, 2014, CT Lines and Kenner the CT Lines/Kenner MTD based on the following grounds: (1) lack of subject matter jurisdiction; (2) res judicata and collateral estoppel based on the Manti State Action; and (3) statute of limitations. On February 18, 2014, CT Lines and Kenner also filed the CT Lines/Kenner Sanctions Motion.

On April 25, 2014, GECC filed the GECC's MTD based on the following grounds: (1) failure to state a cause of action; (2) lack of subject matter jurisdiction; and (3) statute of limitations.

On June 12, 2014, the fully briefed Motion to Intervene by Deborah Manti was filed.

## II.   Discussion

### A.   Subject Matter Jurisdiction

The district courts of the United States are "courts of limited jurisdiction" and may not preside over cases absent subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (internal quotation marks and citation omitted). "Congress has granted district courts original jurisdiction over cases in which there is a federal question, *see* 28 U.S.C. § 1331, and certain cases between citizens of different states, so long as the requirements of complete diversity and amount in controversy are met, *see* 28 U.S.C. § 1332." *Perdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013). "[B]ecause [subject matter jurisdiction] involves a court's power to hear a case, [it] can never be

---

[19]     The image of the check provided by Manti is blurred. The Court reads the date on the check to be on or about September 2, 2009. Manti does not indicate how he obtained a copy of this check.

forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

The Complaint provides that "jurisdiction of the Court is invoked pursuant to 28 USC 1332," and specifically provides that Manti and MTI reside in Staten Island, New York, and that Kenner and CT Lines reside in New York, New York. (Compl., at 1). Both the GECC MTD and the CT Lines/Kenner MTD challenge this Court's subject matter jurisdiction, arguing that there is no complete diversity based on the Complaint's allegations that Manti, MTI, CT Lines, and Kenner are all New York residents. (GECC MTD, at 13; CT Lines/Kenner MTD, at 7).

The Court liberally construes Manti's opposition papers to raise the following three (3) arguments in response to defendants' challenge to subject matter jurisdiction: (i) subject matter jurisdiction exists because there is complete diversity as to Kenner and CT Lines; (ii) "ancillary jurisdiction" exists as to Kenner and CT Lines; and (iii) federal question jurisdiction exists.

### 1.     Diversity Citizenship

Section 1332 "require[s] complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 82, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005). "It is well established that the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322-33 (2d Cir. 2001) (citations omitted). "Although we construe a *pro se* plaintiff's complaint liberally, a plaintiff attempting to bring a case in federal court must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." *Ally v. Sukkar*, 128 F. App'x 194, 195 (2d Cir. Apr. 19, 2005) (citations omitted).

19

In response to defendants' arguments that Manti has failed to prove complete diversity, Manti asserts his "belie[f] [that] there exists complete diversity regarding Patricia Kenner and CT Lines." (Opp. to GECC MTD, at 21).   Specifically, Manti argues that "[a]lthough CT Lines, Inc. has its main office in Manhattan, they use a Paramus, New Jersey address on the titles [and registrations] for two buses they sold me on November 18, 1999." (Opp to CT Lines/Kenner MTD, at 15-16).   For purposes of determining whether there is diversity of citizenship, "a corporation shall be deemed to be a citizen . . . of the State . . . where it has its principal place of business."   28 U.S.C. § 1332(c)(1).   The principal place of business of a corporation is "the place where a corporation's officers direct, control, and coordinate the corporation's activities."   *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2000).   Not only did Manti allege in the Complaint that CT Lines is a resident of New York, Manti admits that CT Lines "has its main office in Manhattan." (Opp. to CT Lines/Kenner MTD, at 15).[20]   CT Lines' New York citizenship is not changed by the fact that the 1980 Crusa Bus Title, the 1981 MCI Bus Original Title, or the 1981 MCI Bus Replacement Title use a New Jersey address.

Manti also argues that "[a]lthough Patricia Kenner lives in Manhattan, and has a summer home in Southampton, I know that she also has a home in Aspen, Colorado." (Opp. to CT Lines/Kenner MTD, at 15-16).[21]   However, Manti misunderstands the legal definition of citizenship for purposes of the diversity statute.   "An individual's citizenship, within the meaning of the diversity statute, is determined by [her] domicile."   *Palazzo ex rel. Delmage v. Corio*, 232

---

[20]   Furthermore, in the complaint in the Manti State Action, Manti alleges that CT Lines "is a New York Corporation in the business of operating and selling buses, and has its principal place of business at 545 Fifth Avenue New York, N.Y." (Compl., ¶ 6, Manti State Action).

[21]   In his opposition to the GECC MTD, Manti states that he is "not sure that CT and Kenner are 'New York' residents," and that "Patricia Kenner lives in Aspen, Colorado, next door to her daughter and grandchildren, and [he] understand[s] she flies home every weekend." (Opp. to GECC MTD, at 20).

F.3d 38, 42 (2d Cir. 2000) (citation omitted).  Domicile is "the place where a person has [her]

true fixed home and principal establishment, and to which, whenever [she] is absent, [she] has

the intention of returning." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (internal

quotation marks omitted).  "At any given time, a person has but one domicile." *Palazzo*, 232

F.3d at 42 (citing *Rosario v. INS*, 962 F.2d 220, 224 (2d Cir. 1992)).  Neither Manti's assertion

that Kenner owns a third home in Colorado, nor his conclusory statement that she "lives in

Aspen" and "flies home every weekend," negate Kenner's New York domicile.

Accordingly, Manti has not satisfied his "burden of demonstrating that . . . diversity is

complete." *Herrick*, 251 F.3d at 322-33.  Therefore, there is no diversity jurisdiction pursuant to

Section 1332.

### 2.  "Ancillary Jurisdiction"

Next, Manti contends that this Court has "ancillary jurisdiction" over CT Lines and

Kenner. (Opp. to GECC MTD, at 20; Opp. to CT Lines/Kenner MTD, at 16).  Manti argues that

even if this Court finds that Kenner and CT Lines are New York residents, and thus there is no

diversity jurisdiction, "that should not result in a dismissal" "[c]onsidering they were added

based on 'ancillary jurisdiction.'"[22]  (Opp. to GECC MTD, at 20).  Manti states that "[i]f you

open up the old case which you previously dismissed, I believe you will see Campus Coach and

it's [sic] owner, Patricia Kenner are connected at the hip with Larry Shute and GE" and "[t]he

buses would never had been in CT [sic] possession unless both the lender and the possessors of

---

[22]     Manti recites the following paragraph from "Baron's Law dictionary": "ANCILLARY
JURISDICTION, the concept that a federal court acquires jurisdiction of the entire case or controversy,
even though some of the matters contained therein would not independently be subject to the jurisdiction
of the federal court." (Opp. to CT Lines/Kenner MTD, at 16). Manti argues that "supplemental
jurisdiction," as set forth in 28 U.S.C. § 1367, applies where "the court decides there is a close
relationship between the case against a defendant who is subject to federal jurisdiction and the defendant
who may not be subject to federal jurisdiction, by himself." (Sur-Reply to CT Lines/Kenner MTD, at 4).

the buses were part of the scheme." (Opp. to CT Lines/Kenner MTD, at 16). Manti requests that "if [the Court] decide[s] that CT and Kenner should be allowed to be defendants, in [the Court's] discretion, then [the Court] should not dismiss my case against GECC." (Opp. to GECC MTD, at 20).

However, Manti misunderstands the limits of this Court's discretion. In light of the limited jurisdiction of the federal courts, "[t]he absence of [subject matter] jurisdiction is non-waivable; before deciding any case [the Court is] required to assure [itself] that the case is properly within [its] subject matter jurisdiction." *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001) (citations omitted). "Congress has established the basic rule that diversity jurisdiction exists under 28 U.S.C. § 1332 only when there is complete diversity of citizenship." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 377, 98 S.Ct. 2396 (1978). "[N]either the convenience of litigants nor considerations of judicial economy can suffice to justify an extension of the doctrine of ancillary jurisdiction to a plaintiff's cause of action against a citizen of the same State in a diversity case." (*Id.*). Accordingly, this Court may neither waive the complete diversity requirement nor assert ancillary jurisdiction over Kenner and CT Lines.

### 3. Federal Question Jurisdiction

Alternatively, Manti argues that the Instant Action is brought pursuant to federal question jurisdiction. For subject matter jurisdiction to exist under Section 1331, the causes of action asserted in the complaint must "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." *Arbaugh*, 546 U.S. at 513 n.10, 126 S.Ct. 1235 (internal quotation marks and

22

citations omitted). "The inadequacy of a federal claim is ground for dismissal for lack of

subject-matter jurisdiction *only* when the claim is *so* insubstantial, implausible, foreclosed by

prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve

a federal controversy." *S. New. England Tel. Co., v. Global Naps Inc.*, 624 F.3d 123, 133 (2d

Cir. 2010) (emphasis in original) (quotation marks and citation omitted).

Manti relies on the civil cover sheet filed electronically on the docket for the Instant

Action, which includes an "X" selecting "Federal Question" as the basis of jurisdiction. (Opp. to

GECC MTD, at 20-21; *see* Civil Cover Sheet [Docket Entry No. 1-1]). However, merely

checking a box cannot create federal question jurisdiction. Moreover, the Complaint expressly

invokes this Court's diversity jurisdiction pursuant to Section 1332.

Manti further argues that "[t]he hiding of these documents for all these years has

prevented me from having my day in court with all of the evidence provided in a timely fashion

and not piecemealed as it has been since 1999," and "[f]or these reasons alone this lawsuit would

come under the 'federal question' jurisdiction." (*Id.* at 22). While Manti contends that "there

certainly is Federal Question Jurisdiction, for depriving me due process, the right to fair court

proceedings, they have violated the RICO[23] and Civil Rights Act collaborating with Patricia

---

[23]     Moreover, to the extent this allegation can be read to assert a civil claim under the Racketeer
Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), it would be so completely
devoid of merit as not to involve a federal controversy since, *inter alia*, Manti does not: (1) particularize
the purported "criminal enterprise within [GECC's] repossession department" that is "running a title
skipping scam around this nation," (Opp. to GECC MTD, at 24), (2) allege what any particular defendant
did to advance a RICO scheme, (3) plead "particular details regarding the alleged fraudulent mailings" or
communications, or (4) allege any facts from which it may be reasonably inferred, *inter alia*, that
defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and
1961(5) in furtherance of any fraudulent scheme. *See Lunday v. Catholic Health Sys. of Long Island*, 711
F.3d 106, 119 (2d Cir. 2013) ("Plaintiffs must plead the alleged mail fraud with particularity, and
establish that the mailings were made in furtherance of a fraudulent scheme."). Accordingly, any RICO
claim in the Complaint, or Manti's opposition papers, is wholly insufficient and frivolous and, thus, is
not a colorable federal claim sufficient to provide this Court with subject matter jurisdiction under Section
1331. *See Taldone v. Barbash*, No. 14-CV-2147, 2014 WL 1800794, at *5 (E.D.N.Y. May 5, 2014).

23

Kenner and CT Lines and certainly violated the Mail Fraud Statute countless times," he does not specifically identify what provisions of the "Constitution, laws, or treaties of the United States" that defendants have purportedly violated. 28 U.S.C. § 1331. Indeed, by asking the Court, in the event it concludes there is no diversity jurisdiction, to "grant [him] permission to amend [his] complaint to include the many statutes the defendants have violated and then allow jurisdiction before your court," Manti acknowledges that he has not yet raised a federal question in the Instant Action. (Opp. to GECC MTD, at 21).

Neither does Manti's self-serving assertion that his lawsuit "would come under the 'federal question' jurisdiction" create a colorable federal claim sufficient to provide this Court with subject matter jurisdiction under Section 1331.[24] (Opp. to GECC MTD, at 22). In any event, even if this Court were to determine that it had subject matter jurisdiction (whether based on diversity or federal question jurisdiction), the Instant Action would still be dismissed on the merits, as set forth below.

### B.      Failure to State a Claim

The defendants have also moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. Specifically, GECC contends that the Instant Action is barred by the Release, *Manti I*, and *Manti II*, and CT Lines and Kenner argue that the Instant Action is precluded by the Manti State Action.

---

[24]      To the extent that Manti's Complaint can be construed to assert a request for relief from the *Manti II* Order pursuant to Rule 60(d), that claim might come within this Court's federal question jurisdiction. However, Rule 60(d) does not create subject matter jurisdiction for Manti to institute an independent action to assert a new claim seeking "a judgement [sic] against CitiCapital and GE for $50,000,000.00 for hiding evidence before you ruled on dismissing my case." (Compl., at 1). Indeed, in Manti's opposition to the GECC MTD, he appears to concede that he may only proceed on his request to reopen *Manti II*. (Opp. to GECC MTD, at 19 ("Today's case is to reopen my 2006 case before you.")).

### 1.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 545, 127 S.Ct. 1955. District courts are required to read *pro se* complaints liberally, *Erickson v. Pardus*, 551 U.S. 89, 94, 129 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)), and to construe them "to raise the strongest arguments that they suggest." *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014).

### 2.    Claims Against GECC

Upon a liberal reading the Complaint, together with Manti's other submissions, the Court construes the Instant Action as one seeking relief pursuant to Rule 60(d), based on fraud upon the Court, from this Court's *Manti II* Order, which denied Manti's request to vacate the Judge Block *Manti I* Order.[25] As explained in the *Manti II* Order, motions for legal relief under

---

[25]     *See e.g.,* Opp. to GECC MTD, at 16 ("Your Honor, if you agree to open your earlier decision based upon the new evidence of Fraud upon the Court, I will finally have my 'day in court'. I will have a chance to take depositions and go to trial. You will then have the ability to decide if Judge Block's decision dismissing my case and granting summary judgment to Associates . . . should be reopened on the grounds of Fraud upon the Court."); *id.* at 19 ("Today's case is to reopen my 2006 case before you. And in that case I am asking you to reopen Judge Block's June 13, 2002 decision dismissing my case against Associates, and granting Associates summary judgment."); Opp. to CT Lines/Kenner MTD, at 15 ("I am asking you to reopen my earlier case against Citicapital in which I requested you open up the Judge Block case. All of this is based upon my recently obtaining the title documents that were hidden from you and from me by GE and its lawyers.").

subsections one (1) through three (3) of Rule 60(b) are subject to a one (1) year limitation period from the date of the order or entry of the judgment. (*Manti II*, 2008 WL 977192, at *5; Fed. R. Civ. P. 60(c)(1)).  Given that Manti commended the Instant Action more than five and one half (5 ½) years after this Court issued the *Manti II* Order and judgment was entered in *Manti II*, legal relief under subsections one (1) through three (3) of Rule 60(b) are time-barred.  The only remaining provision under which Manti may seek relief is Rule 60(d), which provides that "[t]his rule does not limit a court's power to entertain an independent action to relieve a party from a judgment, order, or proceeding . . . or set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d).

### a.    Rule 60(d)

"[I]n determining whether to entertain independent actions for relief" under Rule 60(d), courts look to equitable principles, which require a plaintiff to "(1) show that [he] [has] no other available or adequate remedy; (2) demonstrate that [his] own fault, neglect, or carelessness did not create the situation for which [he] seek[s] equitable relief; and (3) establish a recognized ground – such as fraud, accident or mistake – for the equitable relief." *Campaniello Imports, Ltd. v. Saporiti Italida, S.p.A.*, 117 F.3d 665, 662 (2d Cir. 1997).  "'The type of fraud necessary to sustain an independent action attacking the finality of a judgment is narrower in scope than that which is sufficient for relief by timely motion' under Rule 60(b)(3) for fraud on an adverse party." *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002) (quoting *Gleason v. Jandrucko*, 860 F.2d 556, 558 (2d Cir. 1998)).

"'[F]raud upon the court' . . . is limited to fraud which seriously affects the integrity of the normal process of adjudication . . . [and] should embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that

the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Id.* (internal quotations and citations omitted). "Fraud on the court involves more than harm to a single litigant 'because it threatens the very integrity of the judiciary and the proper administration of justice.'" *Trowbridge v. Inst. for Basic Research in Developmental Disabilities*, No. 98 CV 3529, 2003 WL 21143086, at *2 (E.D.N.Y. Mar.3, 2003), *aff'd*, 88 F. App'x 454 (2d Cir. Feb. 23, 2004) (quoting *Gleason*, 860 F.2d at 559); *see also Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 460 (2d Cir.1994) (holding that fraud on the court involves far more than an injury to an individual litigant, but rather is fraud which seriously affects the integrity of the normal process of adjudication). "[W]hen a movant seeks to set aside a judgment on the basis of fraud on the court, he 'must show that the conduct complained of prevented [him] from fully and fairly presenting his case.'" *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004) (citing *Davenport Recycling Assocs. v. C.I.R.*, 220 F.3d 1255, 1262 (11th Cir. 2000)). "Fraud upon the court must be established by clear and convincing evidence." *King*, 287 F.3d at 95.

Manti asserts that his "new" evidence demonstrates fraud upon the court, which warrants the vacatur of this Court's *Manti II* Order, and therefore, vacatur of the Judge Block *Manti I* Order and the *Manti I* Judgment. While Manti argues that "[t]he real issue for [this Court] to decide now is not whether [he] signed a release, but rather whether Citicapital and GE are guilty of fraud on the court during and after [*Manti II*]" (Opp. to GECC MTD, at 7), he misunderstands that the very nature of *Manti II* involved whether this Court should vacate Judge Block's determination in *Manti I* that: (i) all of MTI's claims were barred by the Release, and (ii) Associates was entitled to summary judgment on its counterclaim for breach of the August 21,

2000 Security Agreements because MTI did not dispute that it was in default or challenge the amount that Associates claimed it was due.

### i.    The Release

The "new" evidence presented by Manti in the Instant Action does not invalidate or otherwise impair the effectiveness of the Release and, therefore, provides no basis to vacate this Court's prior rulings regarding the Release. *See Fitzgerald v. Field*, No. 98-7574, 1999 WL 177278, at *2 (2d Cir. Mar. 26, 1999) (affirming district court's holding that plaintiff's complaint failed to state a claim upon which Rule 60 relief could be granted where "the fraud that [plaintiff] believes occurred during his initial suit involved only the factual portion of his case and could not have affected the outcome, which was decided based on issues of law and not fact"). Judge Block's holding that "the [R]elease is effective and bars all of [MTI's] claims" remains binding. (*Manti I*, 2002 WL 369807, at *3). To the extent that the Instant Action seeks to assert independent claims against GECC, apart from the request for Rule 60(d) relief from the portion of the *Manti II* Order regarding Associate's counterclaims in *Manti I*, such claims are barred by the Release and are dismissed with prejudice.

### b.    Associates' Counterclaims in *Manti I*

Insofar as the Instant Action seeks to vacate the portion of this Court's *Manti II* Order that declined to vacate the granting of summary judgment to Associates on its counterclaims in the Judge Block *Manti I* Order, Manti has not "demonstrat[ed] exceptional circumstances" to warrant the "extraordinary judicial relief" set forth in Rule 60(d). *Paddington Partners v. Bouchard*, 34 F.3d 1332, 1142 (2d Cir. 1994) (internal quotation marks and citation omitted). The "new" evidence presented by Manti in the Instant Action does not demonstrate a "fraud on the Court" sufficient to disturb this Court's holding in the *Manti II* Order that the "new" evidence presented in *Manti II* did not satisfy the strict requirements of Rule 60(d) for relief from the

28

granting of summary judgment to Associates on its counterclaims in the Judge Block *Manti I* Order.[26]

The *Manti II* Order held that plaintiffs' "failed to meet their onerous burden of showing, *inter alia*, that their own carelessness did not create the situation for which they now seek relief." (*Manti II*, 2008 WL 977192, at *6). The Court further concluded that "the record establishes that plaintiffs should have investigated their claims for fraud, which they admittedly suspected during the course of *Manti I*, which would have permitted a timely motion to vacate the final judgment in *Manti I* pursuant to Rule 60(b)(3) within one (1) year from the date the judgment was entered." (*Id.* at *7). As in *Manti II*, Manti fails to "explain why [he] did not seek discovery for the approximate six (6) month period between the filing of *Manti I* and [Associates'] motion for summary judgment to oppose the counterclaims," (*Id.* at *8), nor does he address why the "new" evidence he presents in the Instant Action could not have been uncovered earlier with due diligence, despite his admission that it was obtained by calling a telephone number he discovered by conducting a Google search.[27]

This Court also held in *Manti II* that Manti and MTI had failed to establish a fraud upon the court to warrant relief under the savings clause of Rule 60. Specifically, the Court found that

---

[26]     Manti's contention that "since in my last case, you specifically said that the main reason I lost was because I could not prove that any lawyers were in on it" misrepresents this Court's *Manti II* Order. Manti improperly focuses on only one (1) sentence from this Court's lengthy analysis. *See Manti II*, 2008 WL 977192, at *8 ("Plaintiffs fail to proffer any evidence that Shute colluded with defendant's counsel in a scheme to defraud the court."). Indeed, in *Manti II*, the Court discussed at length Manti's inability to establish fraud upon the court, and that his own "carelessness did not create the situation for which [he] seek[s] equitable relief." *Campaniello*, 117 F.3d at 662.

[27]     Furthermore, Manti admits that he "explained [in *Manti II*] that Associates, then Citicapital, then GECC hid these Campus Coach (CT) documents, important information, from Judge Block, continuing to hide these papers in their then Texas vault." (Opp. to GECC MTD, at 9). The Court considered this allegation of fraud in *Manti II*, but ultimately declined to vacate the Judge Block *Manti I* Order because Manti had failed to establish fraud upon the Court. The fact that Manti has now uncovered and presented these "hidden" documents does not alter the Court's determination.

"[p]laintiffs have not met their burden of establishing that defendant's alleged conduct in *Manti I* prevented them from fairly presenting their defense of the counterclaims." (*Manti II*, 2008 WL 977192, at *8). In fact, MTI "not only failed to oppose the branch of [Associate's] motion seeking summary judgment on the counterclaims, but also stipulated to the amount of money damages awarded on those claims." (*Id.*). Given that Manti presented no defense to Associates' counterclaims in *Manti I*, the only way Manti could have used the "new" evidence that he presents in the Instant Action (which he claims demonstrates that GECC hid the original titles to the 1980 Crusa Bus and the 1981 MCI Bus) would have been to support his claims against Associates in *Manti I*. However, Judge Block held that all of Manti and MTI's claims were barred by the Release, relying on "Manti's admission that he signed the release, the clear and unambiguous language of the release, and plaintiff's failure to put forth cognizable facts to make out a fraud, duress or misrepresentation defense." (*Manti I*, 2002 WL 369807, at *3). As set forth above, Manti's "new" evidence would not have impacted Judge Block's determination because it is irrelevant to the validity of the Release. Therefore, just as this Court held in *Manti II*, "at most, plaintiffs allege fraud committed by defendant on them, not on the court, which can only be brought pursuant to Rule 60(b)(3) and which is, thus, time-barred." (*Manti II*, 2008 WL 977192, at *8).

Furthermore, as set forth in the *Manti II* Order, "'allegations of nondisclosure during pretrial discovery do not constitute grounds for an independent action under Fed.R.Civ.P. 60(b).'" (*Id.* (quoting *Gleason*, 860 F.2d at 559-60)). In *Manti II*, this Court considered "plaintiffs' allegations that defendant failed to disclose its purported conduct committed after commencement of *Manti I*, i.e., (1) that it filed lien applications and applications for post-repossession titles in other states, (2) that it held the titles to the buses, and (3) that it disposed of

30

the repossessed buses," and held that such conduct was "insufficient to justify relief under the 'savings clause' of Rule 60." (*Id.*). The "new" evidence presented in the Instant Action squarely falls within those three (3) categories and in no way warrants a departure from the holding in *Manti II* that such evidence did not justify relief under Rule 60. Accordingly, Manti's request to vacate this Court's *Manti II* Order pursuant to Rule 60(d) is dismissed with prejudice.

### 3.   Claims Against CT Lines and Kenner

The Instant Complaint seeks "a judgement [sic] against CT Lines d/b/a Campus Coach and its owner Patricia Kenner of $10,000,000.00 for stealing 2 buses that were never repossessed but were registered yearly after they were paid $133,000.00 and used as their own continuously from 11/18/1999 to 8/8/2009 and keeping the sale price," and to "[h]ave Judge Feuerstein open up my old case and let me take depositions." (Compl., at 1). CT Lines and Kenner have moved to dismiss Manti's claims, *inter alia*, as barred by the doctrines of res judicata and collateral estoppel, because the instant "allegations are parallel to those set forth in the Manti State Action, [which] were dismissed in their entirety by the Appellate Division for the Second Department." (CT Lines/Kenner MTD, at 10). In response, Manti contends that "the issues in [the Manti State Action] do not include re-selling buses by CT and Kenner, not owned by them," which are "new acts for which they should be held responsible." (Opp. to CT Lines/Kenner MTD, at 14).[28]

---

[28]     *See also* Opp. to CT Lines/Kenner MTD, at 2 ("[Mr. Newman] has attempted to trick you into thinking that the State Court has already reviewed the same documents that I am submitting to you regarding his clients' actions in 2008 and 2009 in selling two of my buses to Nimco in New Jersey based upon false documents. No court has ever reviewed these documents or decided anything about them."); *id.* at 19 ("I am not attempting to raise any issue arising from the November 18, 1999 transaction. . . . Now, I want to hold [CT Lines and Kenner] responsible for selling [the buses] a second time without my permission."); *id.* at 20 ("[Mr. Newman] has created the illusion that I am complaining now of events which occurred in 1999. In reality his clients sold two buses, one in 2008 and the other in 2009. She didn't own them.").

Unlike Manti's claims against GECC, which the Court could construe as a request for relief from *Manti I* and *Manti II* pursuant to Rule 60(d) for fraud on the Court, it is unclear upon what basis Manti requests that this Court "hold Mr. Newman's clients responsible for acts they committed after the Judge Maltese's decision in the state court case." (Opp. to CT Lines/Kenner MTD, at 15). Manti does not raise and the Court is unaware of any rule that would permit it to preside over Manti's claims against CT Lines and Kenner, regardless of whether the "re-selling [of the] buses by CT and Kenner" was not at issue in the Manti State Action.[29] (Opp. to CT

---

[29]       Such a determination is only possibly relevant to the applicability of the doctrines of collateral estoppel and res judicata. Collateral estoppel "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 533 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). The transactional approach to res judicata, adopted by New York courts, "bar[s] a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citing *Smith v. Russell Sage College*, 54 N.Y.2d 185, 445 N.Y.S.2d 67, 429 N.E.2d 746 (1981)). The Court notes that the sale of the two (2) buses in 2008 and 2009 by CT Lines and Kenner is inextricably intertwined with their continued possession, use, and assertion of control, which were squarely at issue in the Manti State Action. *See* Compl. ¶ 1, Manti State Action ("This is an action for fraud, continuing tortious interference with business, and continuing prima facie tort against the company and its principal which . . . continued after the sale to possess and use the vehicles sold to Plaintiffs for Defendants' own purposes and financial benefit."). Manti, who was represented by counsel in the Manti State Action, did not seek reconsideration or appeal of the Appellate Division's decision, which dismissed all of Manti's claims based on CT Lines' and Kenner's continued possession, use, and assertion of control.

Assuming, *arguendo*, that collateral estoppel and/or res judicata are inapplicable here, Manti's claim seeking "to hold [CT Lines and Kenner] responsible for selling [the buses] a second time without [his] permission" amounts, at best, to a cause of action for conversion. In New York, "[a] conversion claim takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 827 N.Y.S.2d 96, 860 N.E.2d 713 (N.Y. 2006). The statute of limitations for a conversion claim under New York law is three (3) years, N.Y. C.P.L.R. 214(3), which accrues at the time of conversion regardless of a plaintiff's knowledge of the conversion. *See Herman v. Depinies*, 273 A.D.2d 146, 146, 710 N.Y.S.2d 899 (N.Y. App. Div. 1st Dep't 2000) (holding that three (3) year limitations period applicable to causes of action for conversion "began to run at the time of the alleged theft even if plaintiff was then unaware of it"). Accordingly, the limitations period for Manti's conversion claim began to run in November 1999 when CT Lines and Kenner "continued after the sale to possess and use the vehicles." (Compl., ¶ 1). Even if the law provided that the limitations period accrues upon a plaintiff's knowledge of the conversion, which it does not, there is no question that Manti was aware that CT Lines and Kenners "exercise[d] control" over the buses when he commenced

Lines/Kenner MTD, at 14). As discussed above, this Court lacks subject matter jurisdiction to preside over Manti's claims against CT Lines and Kenner because there is no diversity of citizenship and Manti has not raised a federal question. Furthermore, as even Manti acknowledges, this Court is without the power to reopen the Manti State Action.[30] *See Atl. Coastline R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970) ("[L]ower federal courts possess no power whatever to sit in direct review of state court decisions."); *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005) (explaining that under *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments"). Accordingly, Manti may not proceed with his claims against CT Lines and Kenner in this Court.[31] Therefore,

---

the Manti State Action in 2006. Furthermore, even if this Court were to permit Manti to assert a claim for conversion based solely upon CT Lines' and Kenners' *sale*, instead of "exercise[ing] control," of the buses, the limitations period began to accrue when the buses were sold in 2008 and 2009. Therefore, any claim for conversion raised for the first time in the Instant Action, which was commenced in 2013, is time-barred.

[30]     *See e.g.*, Opp. to CT Lines/Kenner MTD, at 8 ("I do understand that Your Honor cannot undo the decision of the Appellate Division."); *id.* at 14 ("Mr. Newman mistakenly claims that I am asking this court to open up the state court action. I know you don't have the right to do that.").

[31]     Manti concedes that this Court is not the proper venue for the relief he seeks against Kenner and CT Lines. *See e.g.*, Opp. to CT Lines/Kenner MTD, at 7 ("If I can prove to you that GE/Citicapital/ Associates along with their attorneys defrauded you in 2006, then I should be allowed to open up my case against Mr. Newman's clients regarding their role between 1999 and 2009. I am not afraid to go to state court later for that, if you think I have to."); *id.* at 25 ("[T]he acts of Patricia Kenner and CT did in 2008 and 2009 can be the basis for holding them responsible. Then, if you open up the old case, and if I go back to state court, if necessary to have them reconsider the dismissal of my case based upon this new evidence, Patricia Kenner and CT will pay the price they should for taking a central part in the fraud that has been committed against me."); *id.* at 18 ("If this Court opens up your prior dismissal [in *Manti II*] then it may be necessary at that time to go back to state Court with this new evidence presented here."); *id.* at 11 ("The fact that CT and Patricia Kenner sold my two buses after you dismissed my previous case should be grounds enough to deny Mr. Newman's motion to dismiss. In fact, this new evidence, hidden by GE, should be enough . . . for the State Court case to be opened up.").

33

the CT Lines/Kenner MTD is granted and Manti's claims against CT Lines and Kenner are

dismissed with prejudice.[32]

### C.    Sanctions

CT Lines and Kenner have moved for sanctions pursuant to Rule 11.[33]  In his opposition

to the CT Lines/Kenner Sanctions Motion, Manti reasserts his theories and allegations previously

set forth in the Complaint, and his oppositions to the GECC MTD and the CT Lines/Kenner

MTD.[34]  For the reasons set forth below, the CT Lines/Kenner Sanctions Motion is granted.

### 1.    Grounds for Imposition of Sanctions

It is well-settled that Rule 11 applies to *pro se* litigants.  *See Ginther v. Provident Life &*

*Cas. Ins. Co.*, 350 F. App'x 494, 496 (2d Cir. Oct. 26, 2009) (summary order) (affirming a

district court's imposition of Rule 11 sanctions against a *pro se* litigant).  Rule 11 provides that

sanctions are permitted against a litigant who submits a pleading or other paper for an "improper

purpose," such as "to harass, cause unnecessary delay, or needlessly increase the cost of

---

[32]    In light of the dismissal, with prejudice, of all Manti's claims asserted in the Instant Action, Deborah Manti's Motion to Intervene is denied as moot.

[33]    GECC "has elected not to bring a motion for sanctions at this time," but "reserv[es] the right to do so." (GECC MTD, at 14).  Instead, GECC asks that this Court "preclude any right to amend," and argues that "dismissal should be granted with prejudice." (*Id.*).  As set forth above, all of Manti's claims are dismissed with prejudice.

[34]    *See e.g.*, Opp. to Sanctions Mot., at 2 ("[I]f Mr. Newman believes that there is no basis to my case he can simply present the check that Patricia Kenner gave to GE to repurchase my two buses after repossession.  He can show the Court the two titles she received from GE when she repurchased the buses. . . . The truth is however, that none of these documents exist."); *id.* at 3 (The only response Mr. Newman can even attempt is to try and get this complaint dismissed and ask for sanctions because it parallels your decision handed down in the GE case and the Appellate Division decision except for the reason we are here today.  The missing title.  If I had in my possession this document at the beginning there would never have been a summary judgment by Judge Block.); *id.* ("Your Honor, the fact that there is even a forum for Mr. Newman to file these sanctions motion considering what his clients have brought upon themselves seems laughable to me.  Mr. Newman is fully aware the issues I'm raising here which were never heard or decided by any Court, he was the opposing counsel.  I'm not an attorney but I can read.").

litigation," Fed. R. Civ. P. 12(b)(1), "or when claims are not supported by existing law, lack

evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale

Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (citing Fed. R. Civ. P. 11(b)). "The decision whether to

impose a sanction for a Rule 11(b) violation is [] committed to the district court's discretion."

*Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004).

      In the exercise of its discretion, the Court finds that sanctions are warranted. Despite his

repeated efforts, Manti cannot avoid the conclusion that the Instant Action is related to the

November 1999 Transaction.[35] No matter how many times Manti asks this Court to change its

determination, or the manner in which Manti seeks to re-craft the requested relief, the fact

remains that Manti's claims stemming from the November 1999 Transaction have been

considered and rejected, time and time again. "Needless to say, the constant repetition of the

same 'claims' previously adjudged infirm, does not miraculously breathe new life into them."

*Vasile v. Dean Witter Reynolds, Inc.*, 20 F. Supp. 2d 465, 500 (E.D.N.Y. 1998). Due to Manti's

constant repetition of claims relating to the November 1999 Transaction, this Court's *Manti II*

Order warned "that any further attempts to litigate in this Court the matters of which they

---

[35]    Manti's argument that the Instant Action does not "attempt[] to raise any issue arising from the November 18, 1999 transaction," but instead, seeks only "to hold [CT Lines and Kenner] responsible for selling [the buses] a second time without my permission" is unavailing. (Opp. to CT Lines/Kenner MTD, at 19). Manti's claim against CT Lines and Kenner in the Complaint specifically refers to the November 1999 Transaction. *See* Compl., at 1 (seeking "a judgmement [sic] against CT Lines d/b/a Campus Coach and its owner Patricia Kenner of $10,000,000.00 for stealing 2 buses that were never repossessed but were registered yearly after they were paid $133,000.00 and used as their own continuously from 11/18/1999 to 8/8/2009 and keeping the sale price."). Furthermore, of the various documents upon which Manti relies to assert his claim regarding the sale of the buses by CT Lines and Kenner, only the 1980 Crusa Bus Title, the Oklahoma Lien, and the 1981 MCI Bus Original Title may be considered "new," given Manti's admission that he personally obtained the August 5, 2009 Letter and the 1981 MCI Bus Replacement Title in 2009. (Manti Sur-Reply to CT Lines/Kenner MTD, at 2). There is no question that the 1980 Crusa Bus Title and the 1981 MCI Bus Original Title are related to the November 1999 Transaction. *See* Opp. to GECC MTD, at 9 (noting the "original title papers" "I have now located" "are the two buses I bought from CT Lines, Inc in November of 1999"). Similarly, the Oklahoma Lien itself refers to the November 1999 Transaction, listing the date of the security agreement as November 18, 1999. (Manti Ex. C).

complain in this action, and of which they complained in *Manti I*, may result in the imposition of sanctions, including monetary sanctions and an injunction from filing future lawsuits relating to the same transactions and occurrences." (*Manti II*, 2008 WL 977192, at \*10).

Manti disregarded this Court's warning when he commenced the frivolous Instant Action. This alone provides sufficient grounds upon which this Court may exercise its discretion and impose sanctions upon Manti. *See Fariello v. Campbell*, 860 F.Supp. 54, 71 (E.D.N.Y. 1994) (awarding sanctions where *pro se* plaintiff was previously warned that sanctions may be imposed if he filed another action); *Baasch v. Reyer*, 827 F.Supp. 940, 944 (E.D.N.Y. 1993) (sanctioning *pro se* plaintiff for filing "vexatious motion" where "Court has previously warned [plaintiff] in clear and unmistakable terms that his underlying action was frivolous"); *Colida v. Nokia Inc.*, No. 07 Civ. 8056, 2008 WL 4517188, at \*12 (S.D.N.Y. May 6, 2008) (concluding that imposition of sanctions was warranted against *pro se* plaintiff because, *inter alia*, "plaintiff had been previously warned about the possibility of Rule 11 sanctions with respect to asserting [ ] claims against [defendant]").

Additionally, the Court concludes that sanctions are warranted because Manti has brought the Instant Action for the "improper purpose" of harassing defendants and needlessly increasing the cost of litigation. Fed. R. Civ. P. 12(b)(1). Counsel for CT Lines and Kenner has incurred costs in connection with the filing of two (2) motions for protective orders necessitated by Manti's conduct. The first motion for a protective order, filed by Newman on August 28, 2014 ("First Motion for Protective Order"), sought to quash various deposition subpoenas served by Manti prior to a Rule 26(f) conference and without leave of the Court. [Docket Entry No. 34]. Despite his knowledge that the First Motion for Protective Order remained pending, Manti proceeded to depose a non-party witness on the morning of September 2, 2014 (*See* Manti Letter

36

to Court, filed Sept. 3, 2014 [Docket Entry No. 37], at 2 ("I knew there was a motion to quash, but there was no response from the Court, [so] I decided to move ahead with the deposition.")), just hours before this Court granted the First Motion for a Protective Order. [Docket Entry No. 35]. As a result, counsel for CT Lines and Kenner had to bear the expense of seeking a second order of protection regarding the inadmissibility of the testimony from the deposition conducted in violation of this Court's protective order. [Docket Entry No. 36]. This is, of course, in addition to the costs incurred by defending against the frivolous twenty (20) single-spaced page Complaint, and the more than seventy-five (75) additional single-spaced pages filed by Manti in the Instant Action, excluding exhibits, many of which were improperly filed. Notably, on February 17, 2013, Manti filed a letter enclosing the six (6) page Manti Sur-Reply to the CT Lines/Kenner MTD, after the CT Lines/Kenner MTD was fully briefed and had been submitted to the Court. [Docket Entry No. 16]. Similarly, on April 29, 2014, Manti filed a six (6) page letter to the Court, just days after GECC submitted its fully briefed motion to dismiss to the Court. [Docket Entry No. 27].

The parties' submissions also reveal Manti's history of harassment in connection with the Prior Actions, which counsel for CT Lines and Kenner contends has continued during the Instant Action. Specifically, the CT Lines/Kenner Sanctions Motion provides that "even after this suit was commenced," "[Manti] feels free to email Ms. Kenner; harassing her both legally and personally." (CT Lines/Kenner Sanctions Mot., at 7). In his opposition to the CT Lines/Kenner Sanctions Motion, Manti contends that "rather than attempting to harass anyone, [he] was just responding to requests made by Mr. Newman's clients, after" an "ex-employee" "told them that [Manti] had received [the] original title documents to the 1980 Crusa [he] bought from CT in 1999." (Opp. to CT Lines/Kenner Sanctions Mot., at 3). Yet, Manti readily admits to stalking

37

an employee of CT Lines in 2009, explaining that he "decided to follow [the 1981 MCI Bus] from the Bronx" and "took pictures of the bus as they drove it across the George Washington bridge and delivered it to Nimco in Jersey City, New Jersey." (Opp. to CT Lines/Kenner Sanctions Mot., at 2-3 (citing Manti Ex. JJ)). Furthermore, Manti has been the subject of at least two (2) ex parte orders of protection, issued by the St. Joseph Superior Court in the State of Indiana, which prohibited Manti from stalking and harassing Shute, a former Associates employee who Manti contends is "at the center of the Oklahoma Liens, the false title applications in New York, Indiana, and West Virginia, the withholding of the title documents for the CT Lines buses, and the obvious money game being played with Patricia Kenner" (Opp. to GECC MTD, at 7-8). *See* Manti, Ex. Z (Ex Parte Orders, Feb. 24, 2009, June 24, 2013). In light of the foregoing, the Court finds that the imposition of sanctions is necessary given Manti's failure to heed this Court's warnings and his willful disregard of the judicial process.

### 2.      Types of Sanctions

CT Lines and Kenner specifically request the following relief: (i) "monetary sanctions in the amount of all legal fees and costs in connection with this matter," (ii) "Alfred Manti and MTI be enjoined from commencing any further litigations relating to these matters," and (iii) "Alfred Manti be enjoined from contacting Ms. Patricia Kenner or any principle of C.T. Lines d/b/a in any manner whatsoever at any time in the future." (CT Lines/Kenner Sanctions Mot., at 7-8).

### i.      Legal Costs and Fees

By commencing the Instant Action, Manti has caused CT Lines and Kenner to incur needless expenses in defending against the Instant Action. Therefore, CT Lines' and Kenner's request for all legal fees and costs in connection with the Instant Action is granted. Counsel for CT Lines and Kenner is directed to submit a bill of costs on or before September 19, 2014.

### ii.     Filing Injunction

"The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000). "The filing of repetitive and frivolous suits constitutes the type of abuse [of the judicial process] for which an injunction forbidding further litigation may be an appropriate sanction." *Shafi v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996); *see also Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system." (internal quotation marks and citation omitted)); *Safir v. U.S. Lines Inc.*, 792 F.2d 19, 24 (2d Cir. 1986) ("A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation.").

In determining whether or not to restrict a litigant's future access to the courts, the Second Circuit has instructed courts to consider the following five factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir*, 792 F.2d at 24.  "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.*

The Instant Action is Manti's fourth unsuccessful attempt to litigate essentially the same claims stemming from the November 1999 Transaction. Manti filed the Instant Action notwithstanding this Court's clear warning in the *Manti II* Order that a filing injunction would be imposed upon him if he continued filing actions based on the November 1999 Transaction. Upon consideration of Manti's conduct in light of the factors listed above, the Court concludes that the imposition of an injunction against Manti from commencing actions in this Court, on behalf of himself or MTI, is warranted.

However, before imposing a filing injunction, the Court must first provide a litigant with notice and an opportunity to be heard. *See Lau*, 229 F.3d at 123 (quoting *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998)). Accordingly, **Manti is directed to show cause, by filing an affidavit on or before September 19, 2014**, why an order should not issue enjoining him from filing any new civil action or proceeding in this Court without first obtaining leave of the Court by requiring him: (1) to file a motion for leave to commence any new action or proceeding in this Court, setting forth the good faith basis for the filing of the new action or proceeding, within twenty (20) days of the filing of any complaint, petition or pleading, or the action will be *sua sponte* dismissed with prejudice and without further notice to plaintiff; and (2) to append a copy of the injunction order to any complaint, petition or pleading sought to be filed in this Court and served upon all parties to the action or proceeding with the summons and complaint. However, nothing in any injunction order shall be construed to limit Manti's access to any United States Court of Appeals on any matter.

**Manti's failure to file an affidavit in accordance with this order to show cause, or to otherwise respond to this order to show cause, shall result in the entry of the aforementioned injunction order without further notice.**

### 3.   Protective Order

The Court also finds that a protective order prohibiting Manti from communicating with Kenner or any other principle of CT Lines is warranted.  As Manti is well aware, Kenner and CT Lines are represented by counsel.  To the extent that future communication is required between Manti and Kenner and/or CT Lines, Manti must direct any such communication to counsel.

**Alfred Manti is hereby enjoined from contacting Patricia Kenner or any principal of CT Lines in any manner whatsoever at any time in the future.  Manti is warned that any attempt to directly contact Patricia Kenner or any principle of CT Lines will constitute a violation of this protective order that may result in a finding of civil contempt.**[36]

## III.   Conclusion

For the foregoing reasons, GECC's Motion to Dismiss and CT Lines/Kenner's Motion to Dismiss are granted, and the Complaint is dismissed with prejudice.  Deborah Manti's Motion to Intervene is denied as moot.  Furthermore, CT Lines/Kenner's Sanctions Motion is granted insofar as it seeks all legal fees and costs in connection with the Instant Action.  Counsel for CT Lines and Kenner is directed to submit a bill of cost on or before September 19, 2014.  Manti is directed to show cause **on or before September 19, 2014**, why an order should not issue **enjoining him from filing** any new action or proceeding in this Court without first obtaining leave of court.  Additionally, Manti is enjoined from contacting **Patricia Kenner or any**

---

[36]    Noncompliance with protective orders issued pursuant to Rule 26(c) may be sanctioned under Rule 37 of the Federal Rules of Civil Procedure. *See* 1970 Advisory Committee Note to Fed. R. Civ. P. 37, at 207 (2011 ed.).  Under Rule 37(b)(2) of the Federal Rules of Civil Procedure, a court may "treat[] as contempt . . . the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2).

principal of CT Lines in any manner whatsoever at any time in the future, and is warned that violation of this protective order may result in a finding of civil contempt.

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: September 9, 2014
Central Islip, New York