UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MANTI'S TRANSPORTATION,
ALFRED J. MANTI,

                    Plaintiffs,

      -against-

PATRICIA KENNER, CT LINES d/b/a Campus
Coach, GENERAL ELECTRIC, CITI CAPITAL,

                    Defendants.
--------------------------------------------------------X
FEUERSTEIN, J.

**FILED**
**CLERK**

4/27/2015 4:38 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

<u>**ORDER**</u>
13-CV-6546 (SJF)(AYS)

      On November 26, 2013, Alfred J. Manti ("Manti" or "plaintiff") and Manti's

Transportation (a/k/a Manti's Transportation, Inc.) ("MTI")[1] commenced the instant action (the

"Instant Action") against Patricia Kenner ("Kenner"), CT Lines d/b/a Campus Coach ("CT

Lines"), General Electric and CitiCapital.[2]  Defendants moved to dismiss pursuant to Rules

12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [Docket Entry No. 14 (the "CT

Lines/Kenner MTD"); Docket Entry No. 26 (the "GECC MTD")], and CT Lines and Kenner

filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule

11") [Docket Entry No. 15 (the "CT Lines/Kenner Sanctions Motion")].  By order dated

September 9, 2014, the CT Lines/Kenner MTD and the GECC MTD were both granted, the

complaint was dismissed with prejudice, the CT Lines/Kenner Sanctions Motion was granted

---

[1]      Proceeding *pro se*, Manti commenced the Instant Action on behalf of himself and MTI.  Because a corporate entity such as MTI cannot appear in federal court *pro se* and no notice of appearance was filed by counsel to represent MTI, the Court dismissed MTI's claims without prejudice, and addressed the claims in the Instant Action as brought only be Manti.  [Docket No. 40, at 1, n.1].

[2]      While named as "General Electric" and "CitiCapital" in the caption, the correct entities are General Electric Capital Corporation ("GECC") and Citicapital Commercial Corporation ("Citicapital"), respectively.  [Docket Entry No. 26-1, at 1 n.1-2].  In August 2008, Citicapital merged into Citicorp Leasing, Inc., which changed its name to GE Capital Commercial, Inc. *Id*. at 1 n.2.

and plaintiff was directed to show cause on or before September 19, 2014 why an order should not issue enjoining him from filing any new action or proceeding in this Court without first obtaining leave of the Court. [Docket Entry No. 40 (the "September 2014 Order" or "*Manti III*")]. On September 18, 2014, plaintiff filed an affidavit, which the Court will, upon plaintiff's request, treat as a motion for reconsideration. [Docket Entry Nos. 44, 47 ("Pl. Reconsideration Mot.")]. Plaintiff filed two subsequent letters with the Court supplementing his reconsideration motion and requesting that the Court refer the case to the U.S. Attorney for possible criminal prosecution. [Docket Entry Nos. 55, 56]. On February 25, 2015, CT Lines and Kenner filed a motion for sanctions and charges of criminal contempt based on alleged representations by Manti that he was preparing to file and commence a new action [Docket Entry Nos. 59 and 60], which Manti opposed. [Docket Entry Nos. 61 and 62].

For the reasons set forth below, plaintiff's motion for reconsideration is denied, a filing injunction and a fifteen thousand dollar ($15,000.00) sanction are imposed on plaintiff according to the terms set forth herein, and plaintiff's request for a "referral" to the U.S. Attorney for criminal prosecution and the motion by CT Lines/Kenner for an order of criminal contempt are both denied.

I.      BACKGROUND[3]

A.      Factual Background

In November 1997, MTI, a New York corporation previously engaged in the business of providing commuter bus service in the New York City area, purchased a fleet of buses from a

---

[3]      A summary of the facts and procedural history is provided herein. For a full overview of the facts and history underlying this action, see *Manti Transp., Inc. v. Associates Commercial Corp.*, No. 00-civ-6807, 2002 WL 369807 (E.D.N.Y. Mar. 8, 2002) ("*Manti I*"), *Manti's Transp., Inc. v. Citicapital Commercial Corp.*, No. 06-civ-1699, 2008 WL 977192 (E.D.N.Y. Apr. 9, 2008) ("*Manti II*"), and *Mantis Transp. v. Kenner*, No. 13-civ-6546, 2014 WL 4437689 (E.D.N.Y. Sept. 9, 2014) ("*Manti III*").

third-party vendor, financed by a loan from Associates Commercial Corporation ("Associates")[4] pursuant to a security agreement dated March 31, 1998. *Manti II*, 2008 WL 977192, at *1. Manti was the president and sole shareholder of MTI. *Id.* Following the purchase, Manti discovered that the buses were defective and unusable, but his repeated demands that the third-party vendor repair the buses went unheeded, and in June 1998, he contacted Lawrence Shute ("Shute"), an Associates branch manager, to notify him that since he could not use the buses, MTI was unable to make timely payments on the various security agreements between MTI and Associates. *Id.* MTI returned the fleet of buses to the third-party vendor. *Id.* Without the buses or a new loan from Associates, MTI ceased operations. *Id.*

On November 18, 1999, approximately fifteen (15) months after MTI returned the buses to the third-party vendor, Associates agreed to provide MTI with a new loan and to refinance MTI's existing debt, and MTI and Associates executed the following agreements: (i) a modification agreement governing the refinancing of MTI's existing debt ("Modification Agreement"); (ii) a security agreement governing a new loan to finance the purchase of two (2) buses from CT Lines (the "November 18, 1999 Security Agreement"); and (iii) a general release (the "Release").[5] *See Manti III*, 2014 WL 4437689, at *1. Pursuant to the November 18, 1999 Security Agreement, MTI agreed to pay Associates one hundred eighty thousand four hundred

---

[4]     On November 30, 2000, Associates was acquired by Citigroup, Inc. through merger into Citigroup's subsidiary Citicapital Commercial Corporation. *Manti II*, 2008 WL 977192, at *1. To avoid confusion, the Court refers to the entities in the Instant Action (both GECC and GE Capital Commercial, Inc., collectively) as "GECC," but refers to the name of the entity being used at the time of the relevant actions described herein or the name of entity sued in the prior actions.

[5]     The Release states, *inter alia*: "[MTI] does hereby release and discharge [Associates and its]...successors in interest...of and from any and all manners of action, causes of action, suits, debts, obligations, liabilities, claims, and/or demands whatsoever, whether at law or in equity, known or unknown, which [MTI] now has, can have, ever had...for or by reason of any cause, matter or thing whatsoever including, without limitation, the execution, delivery and performance of the Existing Security Agreements." *Manti III*, 2014 WL 4437689, at *2.

sixty dollars and thirty-two cents ($180,460.32) in monthly installments beginning on January 2, 2000, and Associates agreed to disburse one hundred thirty-three thousand sixty-six dollars ($133,066.00) to CT Lines. *Id.* at *2. The Release provided that it was executed in consideration for, *inter alia*, the November 18, 1999 Security Agreement and MTI's performance of all of its obligations thereunder. *Id.* In compliance with the November 18, 1999 Security Agreement, Associates provided the additional financing to MTI, by disbursing one hundred thirty-three thousand sixty-six dollars ($133,066.00) to CT Lines (the "November 1999 Transaction"), and modified the terms of plaintiff's previous loans as required by the Modification Agreement. *Id.* (citing *Manti I*, 2002 WL 369807, at *2). On August 21, 2000, MTI and Associates rolled MTI's debt over into two (2) new security agreements (the "August 21, 2000 Security Agreements"). *Id.*

B.      Procedural Background

1.      *Manti I*

On October 17, 2000, MTI commenced the *Manti I* action against Associates alleging breach of contract, fraud, unjust enrichment, and tortious interference with prospective business advantage. *Manti I*, 2002 WL 369807, at *1.[6] In *Manti I*, "[a]ll of [MTI's] claims [arose] from its theory that defendant breached its oral agreement to immediately provide [MTI] with the necessary financing to purchase a new fleet of buses by refusing to provide the additional financing for fifteen months after plaintiff returned the buses." *Id.* at *2 (quotations omitted). Associates raised the Release as a complete affirmative defense to MTI's claims and asserted counterclaims for: (i) breach of the August 21, 2000 Security Agreements in the total amount of

---

[6]      The case was originally brought in the Supreme Court of the State of New York, Kings County but removed to this Court based on diversity jurisdiction. *Manti I*, 2002 WL 369807, at *2.

one million two hundred ninety-six thousand five hundred ninety-one dollars and thirty-one cents ($1,296,591.31), plus interest and consequential damages, and (ii) breach of the Release. *Id.*

On March 8, 2002, Judge Block granted Associates' motion for summary judgment, rejecting MTI's contention that it should not be bound by the Release, the terms of which "clearly bar[red] any and all claims [MTI] may have had against [Associates]." *Id.* at *3. Judge Block held that "[i]n light of Manti's admission that he signed the release, the clear and unambiguous language of the release, and [MTI's] failure to put forth cognizable facts to make out a fraud, duress or misrepresentation defense, . . . the [R]elease is effective and bars all of [MTI's] claims." *Id.* Judge Block concluded that "[w]hile the [R]elease does not include an explicit covenant not to sue, the inclusion of the prospective language regarding the entitlement to attorney's fees and costs creates an implied covenant not to sue," which MTI breached by commencing the *Manti I* suit. *Id.* at *4. Judge Block held that Associates was entitled to an award of attorney's fees and costs on its counterclaim for MTI's breach of the Release. *Id.* at *5.

With respect to MTI's breach of the August 21, 2000 Security Agreements, Judge Block, noting that plaintiff "admit[ted] that he signed [the August 21, 2000] Security Agreements" and MTI failed to dispute that it was in default or challenge the amount Associates claimed was due under the August 21, 2000 Security Agreements (*id.* at *4), granted Associates summary judgment and awarded Associates the total amount sought – one million two hundred ninety-six thousand five hundred ninety-one dollars and thirty-one cents ($1,296,591.31) – plus interest at the rate of nine percent (.09) per annum from the dates of the default. *Id.* at *4-5. Judge Block instructed MTI and Associates "to attempt to reach agreement on the dates of default and the amount of [Associate's] attorney's fees and costs." *Id.* at *5. On May 31, 2002, MTI stipulated, *inter alia*, to the date of default of the August 21, 2000 Security Agreements, the amount of

damages it would pay defendant for breach of the agreements, and the amount of attorney's fees and costs it would pay to Associates for its breach of the Release, and final judgment was entered against MTI on June 17, 2002. *See Manti II*, 2008 WL 977192, at \*3. MTI did not appeal or move for reconsideration of the *Manti I* Order or Judgment, or move to vacate the *Manti I* Judgment within one (1) year of the date of its entry pursuant to subsections one (1) through three (3) of Rule 60(b) of the Federal Rules of Civil Procedure ("Rule 60(b)"). *Id.*

2.      *Manti II*

On April 12, 2006, MTI and Manti commenced the *Manti II* action which asserted one claim against Citicapital pursuant to the "savings clause" of Rule 60(b),[7] seeking to vacate the *Manti I* order and judgment on the ground of fraud upon the court. *Manti II*, 2008 WL 977192, at \*1. "Specifically, plaintiffs contend[ed], in effect, that [Associates'] representations in *Manti I* that MTI had title to the buses in issue and that [Associates] had liens on the title to those vehicles were material misrepresentations and that since MTI never had title to the vehicles as a result of [Associates'] conduct and [Associates] never had recorded liens on those vehicles, defendant breached the August 21, 2000 security agreements and, thus, was not entitled to judgment on its counterclaims." *Id.* at \*4.

On April 9, 2008, this Court granted Citicapital's motion to dismiss the action pursuant to Federal Rule 12(b)(6), finding that "at the most, plaintiffs allege fraud committed by defendant on them, not the court, which can only be brought pursuant to Rule 60(b)(3) and which is, thus, time-barred." *Id.* at \*8. The Court further held that "'allegations of nondisclosure during pretrial discovery do not constitute grounds for an independent action under Fed.R.Civ.P. 60(b)'" (*id.* (quoting *Gleason v. Jandrucko*, 860 F.2d 556, 559-60 (2d Cir. 1988))), and thus "plaintiffs'

---

[7]      Pursuant to amendment, effective December 1, 2007, the "savings clause" formerly contained in Rule 60(b) now appears in Rule 60(d), and is virtually identical in all relevant respects.

allegations that defendant failed to disclose its purported conduct committed after commencement of *Manti I*, i.e., (1) that it filed lien applications and applications for post-repossession titles in other states, (2) that it held the titles to the buses, and (3) that it disposed of the repossessed buses, [were] insufficient to justify relief under the 'savings clause' of Rule 60(b)." *Manti II*, 2008 WL 977192, at *8. The Court concluded that Manti and MTI had failed to satisfy the "onerous burden" to succeed on a Rule 60 claim, and had failed to show "that their own carelessness did not create the situation for which they now seek equitable relief," given that "plaintiffs were aware of the possibility of fraud committed by [Associates] prior to the entry of final judgment in [*Manti I*]" and "plaintiffs admittedly knew during the course of the proceedings in *Manti I* that they did not have certificates of title for the buses purchased at issue." *Id.* at *6. Furthermore, the Court determined that "the evidence upon which plaintiffs rel[ied] to purportedly establish their claim that [Associates] concealed the titles from the court in *Manti I* [was] not 'new' for purposes of Rule 60(b)" because it "could have been discovered earlier with due diligence." *Id*.

The Court declined to grant Citicapital's motion for Rule 11 sanctions but advised "plaintiffs and their counsel..that any further attempts to litigate in this Court the matters of which they complain in this action, and of which they complained in *Manti I*, may result in the imposition of sanctions, including monetary sanctions and an injunction from filing future lawsuits relating to the same transactions and occurrences." *Id*.

3.      Manti State Court Action

On May 16, 2006, MTI and Manti commenced an action in the Supreme Court of the State of New York, County of Richmond, against CT Lines, Bertram J, Askwith a/k/a Mike Long ("Askwith"), and Kenner, asserting, *inter alia*, claims for fraud, tortious interference with

business relations, and tortious interference with contract. *See Manti III*, 2014 WL 4437689, at *5. The Supreme Court granted, in part, the motion for summary judgment made by CT Lines, Askwith and Kenner, but denied the motion with respect to certain claims. *Id.* The Appellate Division reversed the Supreme Court's partial denial of summary judgment and granted CT Lines, Askwith and Kenner summary judgment on all of plaintiff's claims. *Id*.

4. *Manti III*

On November 26, 2013, Manti commenced the Instant Action against Kenner, CT Lines and GEEC seeking, *inter alia*, (i) "a judgement [sic] against CitiCapital and GE for $50,000,000.00 for hiding evidence before [this Court] ruled on dismissing [his] case," (ii) "a judgmement [sic] against CT Lines d/b/a Campus Coach and its owner Patricia Kenner of $10,000,000.00 for stealing 2 buses that were never repossessed but were registered yearly after they were paid $133,000.00 and used as their own continuously from 11/18/1999 to 8/8/2009 and keeping the sale price," and (iii) to "[h]ave [this Court] open up [his] old case and let [him] take depositions." *Manti III,* 2014 WL 4437689, at *6 (citing [Docket Entry No. 1 ("Complaint")], at 1). Manti argued that he had obtained "newly discovered evidence" that would "prove how these huge companies covered up crimes committed by its employees and made a mockery of the Federal Court system by hiding evidence that was never intended to see the light of day." *Id*. (citing Complaint, at 2). This "newly discovered evidence" consisted of a copy of the "long-hidden bus title" for one of the buses Manti allegedly purchased on November 18, 1999 and an Oklahoma lien entry form for that bus, as well as a copy of the original title documents for the other bus Manti allegedly purchased on November 18, 1999 and a copy of the "Clean Replacement Title" for that bus, and an August 5, 2009 letter signed by Kenner. *Id*. at *6-7.

Manti's claims against GECC in the Instant Action were construed as claims seeking relief pursuant to Rule 60(d), based on fraud upon the Court, from the *Manti II* decision denying vacatur of the *Manti I* Order. *Id*. at *12. Because motions for legal relief under subsections one (1) through (3) of Rule 60(b) are subject to a one (1) year limitation period from the date of the order or entry of judgment, and because Manti had commenced the Instant Action "more than five and one half (5 ½) years" after the *Manti II* decision, Manti was time-barred from seeking legal relief under subsections one (1) through three (3) of Rule 60(b), and was only able to seek relief under Rule 60(d), which "does not limit a court's power to entertain an independent action to relieve a party from a judgment, order, or proceeding...or set aside a judgment for fraud on the court." *Manti III*, 2014 WL 4437689, at *12.

This Court granted the GECC MTD, finding that the "new" evidence presented by Manti provided no basis to vacate this Court's prior ruling regarding the Release because it did not "invalidate or otherwise impair the effectiveness of the Release" or "a demonstrate a 'fraud on the Court' sufficient to disturb this Court's holding in the *Manti II* Order that the "new" evidence presented in *Manti II* did not satisfy the strict requirements of Rule 60(d) for relief from the granting of summary judgment to Associates on its counterclaims in the Judge Block *Manti I* Order." *Id* at *13. The Court also granted the CT Lines/Kenner MTD, finding it lacked subject matter jurisdiction over the claims between Manti, CT Lines and Kenner because there was no diversity of citizenship between the parties, Manti did not raise a federal question, and the Court lacked the power to reopen the Manti State Action. *Id*. at *15. Manti's Complaint in the Instant Action was dismissed with prejudice and the CT Lines/Kenner Sanctions Motion for legal fees and costs was granted upon a finding that Manti brought the Instant Action for the "'improper purpose' of harassing defendants and needlessly increasing the cost of litigation." *Id*. at *17.

Manti was directed to show cause, by filing an affidavit on or before September 19, 2014, why an order should not issue enjoining him from filing any new action or proceeding in this Court without first obtaining leave of the Court.  *Id*. at \*19.

5.      Manti's Motion for Reconsideration

On September 18, 2014, Manti filed an "Affidavit Explaining Why Court Permission Should not be Required to File New Action, and Request for Reconsideration" (Pl. Reconsideration Mot., at 1) and asked that the Court "treat [the] Affidavit as a Motion to Reconsider…because [he] truly believe[s] [the Court] made certain mistakes, which, if [it] now see[s] the information, will change [its] mind."  *Id*.  On October 17, 2014, GECC and GE Capital Commercial, Inc. filed an opposition to Plaintiff's Motion for Reconsideration [Docket Entry No. 47-2 ("GECC Memorandum of Law in Opp. to Pl. Reconsideration Mot.")], arguing that plaintiff's Motion for Reconsideration is nothing more than an attempt "to re-litigate issues already decided by this Court" by arguing that "a deposition, taken in violation of a protective order, that raises no evidence not already considered by the Court, should compel the Court to reconsider the [September 2014 Order]."  *Id*. at 1.

II.      DISCUSSION

A.      Standard of Review

In this district, motions for reconsideration are governed by Local Civil Rule 6.3 ("Local Rule 6.3"), which provides, in relevant part, that a "notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the court's determination of the original motion....There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked."  Local Rule 6.3.  The requirements of Local

Rule 6.3 are "narrowly construed and strictly applied" (*Chepilko v. Cigna Life Ins. Co. of N.Y.*, 952 F. Supp. 2d 629, 631 (S.D.N.Y. 2013) (quotations and citations omitted)), "so as to avoid duplicative rulings on previously considered issues, and to prevent Rule 6.3 from being used to advance different theories not previously argued or as a substitute for appealing a final judgment." *Anwar v. Fairfield Greenwich Ltd.*, 950 F. Supp. 2d 633, 638 (S.D.N.Y. 2013); *see also Schoolcraft v. City of New York*, 298 F.R.D. 134, 137 (S.D.N.Y. 2014).

"A motion for reconsideration should be granted only when the [party] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Analytical Surveys, Inc. v. Tonga Partners. L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *cert. denied.* — U.S.—, 133 S.Ct. 1805, 185 L.Ed.2d 812 (2013) (accord).

Generally, reconsideration will not be granted where the moving party seeks to introduce additional facts not in the record on the original motion (*see Rafter v. Liddle*, 288 F. App'x 768, 769 (2d Cir. 2008) (motions for reconsideration "are not vehicles for taking a second bite at the apple…and [courts] do not consider facts not in the record to be facts that [the court] 'overlooked'") (internal quotations and citations omitted)); advances new arguments or issues that could have been raised on the original motion (*see Redd v. New York State Div. of Parole*, 923 F. Supp. 2d 393, 396 (E.D.N.Y. 2013) ("A motion for reconsideration is not intended as a

vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion....") (quotations and citations omitted)); or "seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257; *see also Analytical Surveys*, 684 F.3d at 52 (holding that reconsideration "is not a vehicle for relitigating old issues…") (quotations and citation omitted). It is within the sound discretion of the district court whether or not to grant a motion for reconsideration. *See Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 287 (E.D.N.Y. 2013).

       B.       Plaintiff's Motion for Reconsideration

       Plaintiff contends that the Court "missed the point by focusing on [the] Release as blocking all [his] actions." Pl. Reconsideration Mot., at 1. Plaintiff alleges that he "was supposed to receive financing, and titles for the two buses [he] bought on November 18, 1999… in exchange for signing the release" (*id*. at 2) but because he "never received what [he] was supposed to get in exchange for the Release…the Release is no good." *Id.* at 4. Plaintiff argues that his "recent receipt of an original title from GE, which has been hidden from both Judge Block and from [this Court] since 1999, proves that [he] was defrauded by Associates, CitiCapital, and GECC, and that their attorneys participated in the fraud, and have made a mockery of [this] Court." *Id*. at 2.

       Plaintiff's argument that the Release is ineffective because he never received the intended consideration for the Release is an attempt to "repackage and relitigate arguments and issues already considered by the Court in deciding the original motion" and therefore, reconsideration is not proper here. *See Callon Petroleum Co. v. Nat'l Indem. Co.*, No. 06-civ-0573, 2011 WL 4962220, at *1 (E.D.N.Y. Oct. 11, 2011) (citing *United States v. Gross*, 98-cr-0159, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002)). In the September 2014 Order, the Court considered

the "new" evidence relating to the bus titles and found that this "'new' evidence presented by Manti in the Instant Action [did] not invalidate or otherwise impair the effectiveness of the Release and, therefore, provide[d] no basis to vacate this Court's prior rulings regarding the Release." *Manti III*, 2014 WL 4437689, at *13.

Moreover, in *Manti II* and *Manti III*, this Court declined to grant relief pursuant to Rule 60(d) because Manti "failed to meet [his] onerous burden of showing, *inter alia*, that [his] own carelessness did not create the situation for which [he] now seek[s] relief." *Id.* at *14 (citing *Manti II*, 2008 WL 977192, at *6); *see also LinkCo, Inc. v. Naoyuki Akikusa*, No. 09-civ-1551, 367 F. App'x 180, 182 (2d Cir. 2010) ("To obtain equitable relief through an independent action under Rule 60(d), a claimant must [*inter alia*]….'demonstrate that [its] own fault, neglect, or carelessness did not create the situation for which [it] seek[s] equitable relief.'") (citing *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 662 (2d Cir. 1997)). In *Manti II*, plaintiff alleged fraud upon the court based on defendant's representations in *Manti I* that MTI had title to the vehicles when in fact, MTI "never had title to the vehicles as a result of defendant's conduct" (*Manti II*, 2008 WL 977192, at *4), and this Court dismissed plaintiff's claim, holding that "the record establishe[d] that plaintiffs should have investigated their claims for fraud, which they admittedly suspected during the course of *Manti I*, which would have permitted a timely motion to vacate the final judgment in *Manti I* pursuant to Rule 60(b)(3) within one (1) year from the date the judgment was entered." *Id.* at *7. In *Manti III*, this Court held that that "[t]he fact that Manti has now uncovered and presented these 'hidden' documents does not alter the Court's determination" (*Manti III*, 2014 WL 4437689, at *14 n.27) regarding Manti's inability to establish fraud upon the Court because Manti "fail[ed] to 'explain why [he] did not seek discovery for the approximate six (6) month period between the filing of *Manti I*

and [Associates'] motion for summary judgment to oppose the counterclaims,' nor [did] he

address why the 'new' evidence he present[ed] in the Instant Action could not have been

uncovered earlier with due diligence, despite his admission it was obtained by calling a

telephone number he discovered by conducting a Google search." *Id.* at *14 (citing *Manti II*,

2008 WL 977192, at *8).  Plaintiff was aware or should have been aware of the fraud he alleges

in his reconsideration motion, the alleged concealing of the bus titles, within the time plaintiff

had to seek relief from the *Manti I* order pursuant to Rule 60(b).  *See In re Hoti Enterprises, L.P.*,

549 F. App'x 43, 44 (2d Cir. 2014) (affirming district court's conclusion that reconsideration

was inappropriate under Rule 60(d)(1) because "[plaintiff] was or should have been aware of the

fraud it alleges in its reconsideration motion within the time it had to seek relief pursuant to

60(b)" and "[plaintiff] could have brought a claim pursuant to Rule 60(b) within one year of the

[Order] but failed to do so").

To the extent that plaintiff alleges that this the newly discovered title documents  "show

lawyer involvement" (Pl. Reconsideration Mot., at 2), this Court rejects, as it has in the past,

plaintiff's contention that recently discovered title documents and defendants' alleged

misconduct with respect to those documents establishes fraud upon the court.  *See Manti III*,

2014 WL 4437689, at *13 ("[t]he 'new' evidence presented by Manti in the Instant Action does

not demonstrate a 'fraud on the Court'").  The fraud alleged here is not "fraud which seriously

affects the integrity of the normal process of adjudication" (*Hadges v. Yonkers Racing Corp.*, 48

F.3d 1320, 1325 (2d Cir. 1995) (citations omitted)), such as "bribery of a judge, jury tampering,

or hiring an attorney for the sole purpose of improperly influencing the judge." *Stewart v.

O'Neill*, No. 00-civ-8560, 2002 WL 1917888, at *2 (S.D.N.Y. Aug. 20, 2002).  The alleged

misrepresentations and failure to deliver the original titles to plaintiff "at most… allege fraud

committed by defendant on [plaintiff], not on the court, which can only be brought pursuant to Rule 60(b)(3) and which, is, thus, time-barred." *Manti III*, 2014 WL 4437689, at *14 (citing *Manti II*, 2008 WL 977192, at *8); *see also In re Lawrence,* 293 F.3d 615, 622 n.5 (2d Cir. 2002) ("[T]he savings clause generally cannot be used to preserve an ordinary Rule 60(b)(3) fraud claim which could have been asserted in a timely manner...") (citation omitted).

The above analysis is not affected by plaintiff's allegations that new evidence, in the form of a deposition of John Passananti [Docket Entry No. 47-1, Ex. 2 ("Passananti Dep.")] shows "from 'the inside' that CT's principles intentionally defrauded [him] even <u>before</u> [he] bought the two buses on November 18, 1999" (Pl. Reconsideration Mot., at 3 (emphasis in original)), and shows "the possible collusion with the attorneys for Associates, Citicapital, or GECC." *Id.* Even assuming the deposition of Mr. Passannanti raises new evidence that would alter the Court's decision, which it does not, it would not be proper for the Court to consider this evidence, because this evidence was not in the record on the original motion (*see Rafter*, 288 F. App'x at 769 ("we do not consider facts not in the record to be facts that the court 'overlooked'") and was obtained in violation of the September 2, 2014 protective order quashing all outstanding requests for depositions and any other discovery and prohibiting plaintiff from serving any additional subpoenas or discovery requests pending the determination of defendants' motions to dismiss. [Docket Entry No. 35].

Plaintiff's request for reconsideration to "go back to unravel Judge Block's decision, because of the fraud on the court and the fraud upon [him] in not giving [him] what [he] was supposed to get in exchange for the Release" (Pl. Reconsideration Mot., at 2) is an attempt to relitigate the same arguments previously raised by plaintiff and rejected by the Court in the September 2014 Order, and therefore, plaintiff's motion for reconsideration is denied.

C.    Sanctions

1.    Filing Injunction

In this Circuit, "[t]he procedure for imposing leave-to-file sanctions involves three stages: (1) the court notifies the litigant that future frivolous filings might result in sanctions; (2) if the litigant continues this behavior, the court orders the litigant to show cause as to why a leave-to-file sanction order should not issue; and (3) if the litigant's response does not show why sanctions are not appropriate, the court issues a sanctions order. *Viola v. United States*, 307 F. App'x 539, 539 (2d Cir. 2009). Manti was warned that "any further attempts to litigate in this Court the matters of which they complain in this action, and of which they complained in *Manti I*, may result in the imposition of sanctions, including monetary sanctions and an injunction against filing future lawsuits relating to the same transactions and occurrences." *Manti II*, 2008 WL 977192, at *10. Nevertheless, Manti filed the Instant Action arising from the same underlying matters as *Manti I* and *Manti II*, and this Court found that "the imposition of an injunction against Manti from commencing actions in this Court, on behalf of himself or MTI, [was] warranted" (*Manti III*, 2014 WL 4437689, at *19) and directed Manti "to show cause…why an order should not issue enjoining him from filing any new civil action or proceeding in this Court without first obtaining leave of the Court." *Id*. Manti's September 18, 2014 affidavit provides no reason why a filing injunction should not be imposed, but is devoted entirely to his arguments for reconsideration. *See generally* Pl. Reconsideration Mot. Thus, Manti has received ample notice and opportunity to be heard regarding a possible filing injunction but has failed to adequately show cause why a filing injunction should not be imposed.

Therefore, for the reasons set forth above and in the September 2014 Order (*see Manti III*, 2014 WL 4437689, at *15-19), Manti is enjoined from filing any new civil action or proceeding in this Court relating to the transactions at issue in *Manti I*, *Manti II*, and *Manti III* without first obtaining leave of the Court by: (1) filing a motion for leave to commence any new action or proceeding in this Court, setting forth the good faith basis for the filing of the new action or proceeding, within twenty (20) days of the filing of any complaint, petition or pleading, or the action will be *sua sponte* dismissed with prejudice and without further notice to plaintiff; and (2) appending a copy of this injunction order to any complaint, petition or pleading sought to be filed in this Court and served upon all parties to the action or proceeding with the summons and complaint.

### 2. Legal Fees and Costs

Pursuant to the September 2014 Order, Adam Newman, counsel for CT Lines and Kenner submitted a bill of costs and an attorney affidavit reflecting thirty-three thousand, five hundred seven dollars and fifty cents ($33,507.50) in legal fees for one hundred three and six-tenths (103.6) hours of work and five hundred fifty-five dollars and ten cents ($555.10) in costs incurred in the Instant Action. [Docket Entry No. 45 ("CT Lines/Kenner Bill of Costs")]. On October 17, 2014, Manti filed an "affidavit…opposing the costs awarded to Patricia Kenner and CT Lines," however the affidavit does not address the CT Lines/Kenner Bill of Costs other than to state that Mr. Newman "should forfeit payment for his services for lying to the Court." [Docket Entry No. 49].

### a. Legal Fees

The Second Circuit calculates attorney's fees by determining the "lodestar" or the "presumptively reasonable fee" (*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County*

*of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)) which is the product of a reasonable hourly rate and

the number of reasonably expended hours. *See Stanczyk v. City of New York*, 752 F.3d 273, 284

(2d Cir. 2014); *Bergerson v. New York State Office of Mental Health, Cent. N.Y. Psychiatric*

*Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011). In calculating the "presumptively reasonable fee," courts

must consider "*all* of the case-specific variables that [the Second Circuit] and other courts have

identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."

*Arbor Hill*, 522 F.3d at 190 (emphasis in original).

## 1.    Hourly Rate

Under "the forum rule, courts should generally use the hourly rates employed in the

district in which the reviewing court sits in calculating the presumptively reasonable fee"

(*Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citations omitted)),

though a court "may apply an out-of-district rate (or some other rate, based on the

aforementioned case-specific variables) if, in calculating the presumptively reasonably fee, it is

clear that a reasonable, paying client would have paid those higher fees." *Id.* (citations omitted).

Mr. Newman, the principle of the Law Office of Adam T. Newman, P.C. [Docket Entry

No. 15 (Affidavit of Adam T. Newman in Support of Motion Pursuant to Fed. R. Civ. P. 11)]

charged an hourly rate of three hundred and twenty-five dollars ($325.00) per hour, which is a

reasonable rate given that the prevailing hourly rate for partners and solo practitioners in this

district is between three hundred ($300.00) and four hundred ($400.00) dollars. *See, e.g.*, *Konits*

*v. Karahalis*, 409 Fed. App'x 418, 422-23, (2d Cir. 2011) ("prevailing rates for experienced

attorneys in Eastern District of New York cases range from approximately $300 to $400 per

hour"); *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450

F.3d 91, 98 (2d Cir. 2006) (affirming setting $325 as a reasonable hourly rate for solo

practitioner); *Colon v. City of New York*, No. 09-civ-0008, 2012 WL 691544, at *21 (E.D.N.Y. Feb. 9, 2012), *report and recommendation adopted*, 2012 WL 686878 (E.D.N.Y. Mar. 2, 2012) (approving $350 hourly rate for solo practitioner).

### 2. Hours Expended

"Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done" (*Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)), and which "must be sufficiently detailed to determine the reasonableness of the hours claimed for any given task." *Parrish v. Sollecito*, 280 F. Supp. 2d 145, 171 (S.D.N.Y. 2003). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "[O]nly those hours 'reasonably expended' are to be awarded." *McDonald*, 450 F.3d at 96 (quoting *Hensley*, 461 U.S. at 434-35). In determining the amount of hours reasonably expended, the court must:

> examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case. Efforts put into research, briefing and the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts…In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.

*Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (citations omitted). "District courts have broad discretion to determine the reasonableness of hours claimed based on their general experience and familiarity with the case." *Brady v. Wal–Mart Stores, Inc.*, No. 03-civ-3843, 2010 WL 4392566, at *6 (E.D.N.Y. Oct. 29, 2010) (quotations and citations omitted). In

determining whether an award is reasonable, the District court must review and eliminate hours that are found to be "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

"Courts may reduce the number of hours in a fee application where the time entries submitted by counsel are too vague to sufficiently document the hours claimed." *Barclays Capital Inc. v. Theflyonthewall.com*, No. 06-civ-4908, 2010 WL 2640095, at * 4 (S.D.N.Y. June 30, 2010); *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) (finding entries such as "letter to [opposing counsel]," "telephone call to [opposing counsel]" and "discussion with [opposing counsel]" to be "overly vague" and reducing the hours claimed by 15%). "Courts may also make reductions for 'block-billing,' that is, the practice of 'aggregating multiple tasks into one billing entry[]" (*Barclays Capital*, 2010 WL 2640095, at * 4 (quotations and citations omitted); *see also Linde v. Arab Bank, PLC*, 293 F.R.D. 138, 142 (E.D.N.Y. 2013) ("Where billing records include a large number of block-billed entries and there is an issue as to the reasonableness of the number of hours counsel spent on the matter, an across-the-board reduction in billing hours is appropriate")), because "block-billing makes it difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided." *Linde*, 293 F.R.D. at 142 (citations and quotations omitted); *see also LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010); *Miroglio*, 629 F. Supp. 2d at 313-14. In reducing the amount of attorney's fees, the court may exclude the excessive and unreasonable hours from its calculation by making an across-the-board reduction, or percentage cut, in the amount of hours. *See McDonald*, 450 F.3d at 96 ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application.") (quotations and citation omitted); *Kirsch*, 148 F.3d at 173 (accord).

Mr. Newman's billing records indicate a total of one hundred three and six-tenths (103.6) hours expended between November 2013 and September 2014 on various tasks related to defending CT Lines and Kenner in the Instant Action. [Exhibit to Docket Entry No. 45 submitted for *in camera* review ("Newman Invoices")]. However, many of Mr. Newman's billing entries are vague (*see, e.g.*, Newman Invoices, Invoice Number 12773, at 4 ("Continued preparation of reply memoranda") and 3 ("Communications with A. Manti re motions"), Invoice Number 1529, at 1 ("Telephone Conference with P. Kenner re: status")), warranting a reduction in billed hours. *See, e.g.*, *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998) (affirming 20% reduction in billed time in light of vague entries such as "work on motion"); *Mary Jo C. v. Dinapoli*, No. 09-civ-5635, 2014 WL 7334863, at *10 (E.D.N.Y. Dec. 18, 2014) (reducing billed hours by 20% based on vague billing entries including those detailing "work[ing] on memo of law in opposition to defendants' motion to dismiss"); *Harley v. Nesby*, No. 08-civ-5791, 2012 WL 1537881, at * 12 (S.D.N.Y. May 2, 2012) (reducing attorneys' fees for vague billing entries such as entry describing "memorandum to R. Grass re[:] status and strategy"); *Klimbach v. Spherion Corp.*, 467 F. Supp. 2d 323, 332 (W.D.N.Y. 2006) (finding entries for "work on motion for summary judgment," absent further explanation, to be unacceptably vague); *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 388 F. Supp. 2d 159, 166 (W.D.N.Y. 2005) (reducing hours claimed by 20% because billing entries that included "meeting and conferences regarding 'strategy,' 'research,' and 'status,' as well as "generalized references to work on 'brief[s]' and 'affidavit[s]' and to 'prepar[ing]' for conferences, oral arguments, etc." were "impermissibly vague").

Moreover, many of the entries are "block-billed" (*see, e.g.*, Newman Invoices, Invoice Number 12773, at 2 ("Communications with A. Manti re GE and motions; continued preparation

of pre-answer motion to dismiss; communications with P. Kenner re motions"), Invoice Number 1529, at 2 ("Brief legal research re: appropriate relief from discovery abuse and improper testimony; telephone conference with Court re: plaintiff conduct; preparation of letter motion to Court re: plaintiff conduct; communications to P. Kenner re: status and motion; communications with all parties re: motion; file motion with Court")), and "multiple tasks are aggregated without identification of how much time was spent on each task," warranting a further reduction in the amount of hours. *Harley*, 2012 WL 1537881, at *13 (reducing by an additional 10% the billed hours due to the attorney's use of block-billing); *Aiello v. Town of Brookhaven*, 94-civ-2622, 2005 WL 1397202 at *3 (E.D.N.Y. June 13, 2005) (applying 10% reduction to billed hours because of attorneys' "substantial use of block billing"). One of the entries which is block-billed includes time Mr. Newman spent traveling to the Supreme Court in Staten Island on December 17, 2013 to review documents (*see* Newman Invoices, Invoice Number 12773 at 1 ("Attend Supreme Court, Staten Island and review, analysis and retrieve copies of all pertinent Court documents from prior action"), and it cannot be determined which part of the four and four-tenths (4.4 hours) billed at the full hourly rate were for travel time, which should be compensated "at 50% of [counsel's] reasonable hourly rate." *Germain v. County of Suffolk*, 672 F. Supp. 2d 319, 326-27 (E.D.N.Y. 2009); *see also Mister Sprout, Inc. v. Williams Farms Produce Sales, Inc.*, 881 F. Supp. 2d 482, 490 (S.D.N.Y. 2012) ("courts in the Second Circuit often reduce attorneys' fees for travel time by 50 percent").

Additionally, Mr. Newman's billing records indicate two and nine-tenths (2.9) hours and nine hundred, forty-two dollars and fifty cents ($942.50) devoted to "communications with" Manti and his clients regarding "photographs and defamatory flyers" (*see* Newman Invoices,

Invoice Number 1506, at 1-2) which does not appear to be work necessary to the defense of the Instant Action and therefore, these billed hours will be removed.

In light of the aforementioned deficiencies in Mr. Newman's billing entries, the two and nine-tenths (2.9) hours for work related to "photographs and defamatory flyers," will be removed, and an across-the-board twenty percent (20%) reduction in the remaining one hundred and seven-tenths (100.7) billed hours will be applied due to vague entries, block-billing and billing at full rate for travel time for a total of eighty and six-tenths (80.6) billable hours. Therefore, twenty-six thousand one hundred and ninety-five dollars ($26,195.00) represents the reasonable attorney's fees calculated under the lodestar method.

b.    Costs

Mr. Newman seeks five hundred fifty-five dollars and ten cents ($555.10) in costs. *See* Newman Invoices, Invoice Number 12773, at 5. These costs include copying costs, PACER charges and costs for local travel including tolls and mileage. "Costs are ordinarily recoverable where they are 'incidental and necessary to the litigation.' These costs routinely include filing fees, process servers, postage, travel, and photocopying." *Capone v. Patchogue-Medford Union Free Sch. Dist.*, No. 04-civ-2947, 2011 WL 743573, at *5 (E.D.N.Y. Feb. 23, 2011) (quoting *Tips Exports, Inc. v. Music Mahal, Inc.*, No. 01-civ-5412, 2007 WL 952036, at *11 (E.D.N.Y. Mar. 27, 2007)); *see also U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996) ("Photocopying costs may be recovered even though the underlying document was not admitted at trial."); *Levy v. Powell,* No. 00-civ-4499, 2005 WL 1719972, at * 12 (E.D.N.Y. July 22, 2005) (allowing recovery of costs for *inter alia* "photocopies…travel, filing fees"); *Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*, 549 F. Supp. 2d 274, 286-87 (E.D.N.Y. 2008) (awarding costs for computerized legal research

including PACER-related research, and travel expenses). Here, the costs are of the type which are ordinarily recoverable, and therefore Mr. Newman is entitled to the full five hundred fifty-five dollars and ten cents ($555.10) for costs.

        c.    Amount of Attorney's Fees and Costs to be Awarded Pursuant to Rule 11

While twenty-six thousand one hundred and ninety-five dollars ($26,195.00) in fees and five hundred fifty-five dollars and ten cents ($555.10) in costs represent the reasonable attorney's fees and costs calculated under the lodestar method, "that does not end the matter. Under the provisions of Rule 11(c)(2), the Court may award some or all of the reasonable attorney's fees and costs." *Kirschner v. Zoning Bd. of Appeals of Inc. Vill. of Valley Stream*, 159 F.R.D. 391, 399 (E.D.N.Y. 1995); *see also S.E.C. v. Smith*, 798 F. Supp. 2d 412, 436 (N.D.N.Y. 2011), *aff'd in part, dismissed in part*, 710 F.3d 87 (2d Cir. 2013) ("in making [a Rule 11 sanction] award, a court must begin with the lodestar or presumptively reasonable fee, which is then adjusted as necessary to assure [the] deterrent objective is achieved") (internal quotations and citation omitted). The amount of attorney's fees awarded under Rule 11 need not be exactly equivalent to the lodestar amount. *See, e.g.*, *Eastway Const. Corp. v. City of New York*, 821 F.2d 121, 122-23 (2d Cir. 1987) ("the course of the law concerning use of attorney's fees as one of an array of sanctions against frivolous litigation has recognized that a lodestar amount need not be routinely awarded" and "a fee substantially less than the lodestar amount is permissible."); *U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 171 (2d Cir. 1996) ("any sanction or shifting of fees and costs which is made [under Rule 11], need not reflect actual expenditures.").

In awarding attorney's fees and costs pursuant to Rule 11, a district court must be mindful that "[t]he purpose of a Rule 11 award 'is not compensation of the victimized party but

rather the deterrence of baseless filings and the curbing of abuses.'" *On Time Aviation, Inc. v. Bombardier Capital, Inc.*, 354 F. App'x 448, 452 (2d Cir. 2009) (quoting *Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994)); *see also Arbor Hill*, 369 F.3d at 98 (observing that Rule 11 "is not a fee-shifting mechanism and does not create an entitlement to atttorney's fees") (internal quotation marks and citation omitted). "When imposing fees and costs, a court should 'exercise [its] discretion to award only that portion of a [party's] attorney's fee thought to be reasonable to serve the sanctioning purpose of the Rule.'" *Bonded Life Fund, LLC v. AXA Equitable Life Ins. Co.*, No. 13-civ-5451, 2014 WL 1329234, at *1 (S.D.N.Y. Apr. 1, 2014) (quoting *Eastway Const. Corp. v. City of N.Y.*, 821 F.2d 121, 123 (2d Cir. 1987). "[B]ecause the purpose of imposing Rule 11 sanctions is deterrence, a court should impose the least severe sanctions necessary to achieve the goal." *Schottenstein v. Schottenstein*, No. 04-civ-5851, 2005 WL 912017, at *2 (S.D.N.Y. Apr. 18, 2005). The Advisory Committee notes to the 1993 Rule 11 amendments provide a list of factors a court may consider in determining whether to impose a sanction or what sanctions would be appropriate:

> Whether the improper conduct was willful or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in either time or expense; whether the responsible person is trained in law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and what amount is needed to deter similar activity by other litigants.

*See* Rule 11(c) Advisory Comm. Notes (1993).

In this case, "awarding defendant's full amount of fees incurred would be more than necessary to sufficiently deter similar conduct in the future." *Bonded Life Fund*, 2014 WL 1329234, at *3 (awarding Rule 11 sanction for filing of frivolous action of "slightly less than

two-thirds of the amount in fees defendant incurred in defending [the] action" because the imposition of a sanction in the full amount of attorneys' fees was "unnecessary to achieve deterrence"); *see also Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 126, 110 S. Ct. 456, 460, 107 L. Ed. 2d 438 (1989) (explaining that the purpose of Rule 11 "is not reimbursement but 'sanction'"). An award of fifteen thousand dollars ($15,000.00), which is slightly more than half of the lodestar amount, is fair and reasonable under the circumstances and would serve to deter this *pro se* plaintiff from similar conduct in the future. *See Hoatson v. New York Archdiocese*, No. 05-civ-10467, 2007 WL 431098, at *16 (S.D.N.Y. Feb. 8, 2007), *aff'd*, 280 F. App'x 88 (2d Cir. 2008) (fashioning sanction for $8,000 rather than "full reimbursement of [defendants'] attorneys' fees" because "the purpose of Rule 11 is to deter, not reimburse"); *Kirschner*, 159 F.R.D. at 399-400 (awarding $2,500 as Rule 11 sanction when lodestar amount was $12,706.32 because $2,500 was "more than adequate as a sanction with regard to the particular conduct at issue, as well as to deter repetition of the conduct by the plaintiffs' attorney or comparable conduct by similarly situated persons").

For all the reasons set forth above and in the September 2014 Order, plaintiff is sanctioned fifteen thousand dollars ($15,000.00) for commencing and prosecuting the Instant Action, which shall be used to repay the litigation fees and costs incurred by counsel for CT Lines/Kenner.

D.    Additional Requests by Manti and CT Lines/Kenner

Manti's requests for referral to the U.S. Attorney for possible criminal prosecution [Docket Entry Nos. 56 and 61] are denied. The request by CT Lines/Kenner for issuance of "an Order to Show Cause pursuant to Federal Rule of Criminal Procedure 42 stating the time and place of trial to asses charges of criminal contempt" or for the Court to "schedule a conference to

question Plaintiff directly on…issues concerning his future intent and disregard for this Court's Order and authority" [Docket Entry No. 59] is denied, however Manti is advised of the filing injunction imposed per this Order and reminded that per the September 2014 Order, he is prohibited "from communicating with Kenner or any other principle of CT Lines," that he "must direct any such communication to counsel" and that "any attempt to directly contact Patricia Kenner or any principle of CT Lines will constitute a violation of [the] protective order that may result in a finding of civil contempt." *Manti III*, 2014 WL 4437689, at *19.

III.    CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration is denied, a filing injunction is imposed on plaintiff according to the terms set forth herein, plaintiff is sanctioned fifteen thousand dollars ($15,000.00) pursuant to Rule 11, which shall be used to repay the litigation fees and costs incurred by counsel for CT Lines/Kenner, plaintiff's request for referral to the U.S. Attorney for criminal prosecution is denied, and CT Lines/Kenner's motion for an order of criminal contempt against Manti is denied.  The Clerk of the Court shall enter judgment accordingly and close this case.

**SO ORDERED.**


s/ Sandra J. Feuerstein
Sandra J. Feuerstein
United States District Judge



Dated:  April 27, 2015
        Central Islip, New York